HOLDRIDGE, J.
*18 The defendant, City of Baton Rouge and Parish of East Baton Rouge (City/Parish), appeals a summary judgment rendered in favor of plaintiff, Georgia-Pacific Consumer Operations, LLC (GP), holding that GP is entitled to tax refunds from the City/Parish. We affirm.
BACKGROUND
The facts forming the basis of this lawsuit are largely undisputed. On November 30, 2009, and July 15, 2011, GP filed petitions against the City/Parish seeking judicial review of the City/Parish's denial of its refund claims for sales taxes paid on the purchases of certain chemicals for the taxable periods January 1, 2003, through December 31, 2005, and from January 1, 2006, through January 1, 2008 (sometimes referred to as the "taxable periods").[1] During the taxable periods, GP operated a paper mill in Port Hudson, located in East Baton Rouge Parish, and purchased sodium chlorate, hydrogen peroxide, and elemental oxygen (sometimes collectively referred to as "the bleaching chemicals") for use in the bleaching process of GP's overall manufacturing process for its white paper products. For the first taxable period of 2003 through 2005, GP paid $1,576,182.39 to the City/Parish in local sales/use taxes on its purchases of the bleaching chemicals. During the second taxable period of 2006 through 2008, GP paid the City/Parish $1,695,105.65 on its purchases of the bleaching chemicals.[2]
It is undisputed that during the taxable periods, GP purchased the bleaching chemicals for further processing into its pulp and paper products, which are tangible items of property that are ultimately sold at retail. It is further undisputed that the chemicals are beneficial to the final products, are recognized, identifiable, and integral components of the final products, and were purchased for the purpose of inclusion in the final products.
GP's refund claim is based on the Louisiana Supreme Court's 2008 decision in International Paper, Inc. v. Bridges, 2007-1151 (La. 1/16/08), 972 So.2d 1121. Therein, the Court held that International Paper's purchase of the bleaching chemicals used as a part of its white paper manufacturing process (sodium chlorate, hydrogen peroxide, and oxygen, the same chemicals used by GP) were non-taxable as purchases of "materials for further processing into articles of tangible personal property for sale at retail" pursuant to La. R.S. 47:301(10)(c)(i)(aa), commonly referred to as "the further processing exclusion." The court held that the chemical purchases fell under the further processing exclusion because: (1) they became recognizable and identifiable components of the end products; (2) they were beneficial to the end products; (3) they were materials for further processing, and as such, were purchased with the purpose of inclusion in the end products. International Paper, 972 So.2d at 1136.
In denying GP's refund requests, the City/Parish relied on a 1984 Compromise Payment Agreement (sometimes referred to as the "1984 Agreement") in which GP and the City/Parish agreed that the bleaching chemicals at issue were subject to the local sales and use tax. The parties acknowledged that GP determined in good faith that its purchases of the bleaching *19 chemicals were exempt from the East Baton Rouge Parish sales and use tax, while the City/Parish believed those purchases were subject to its sales and use tax. The 1984 Agreement recognized that it was in the mutual interest of both parties to reach an agreement as to which chemicals would be considered taxable in the future to avoid the need for litigation and to provide GP with a means of paying its correct sales and use tax liability. The 1984 Agreement sets forth three categories of chemicals and additives: (1) chemicals, the purchases of which are taxable because the chemicals are not processed into pulp or paper; (2) chemicals, the purchases of which are not taxable when used for certain purposes; and (3) chemicals, the purchases of which are non-taxable because the chemicals are processed into pulp or paper. The bleaching chemicals at issue in this case were classified as "taxable" in the 1984 Agreement because they were not processed into pulp or paper. The City/Parish took the position that the 1984 Agreement, a good faith compromise to avoid future litigation with respect to the chemicals listed therein, and which had been followed by the City/Parish and GP, remained in effect, making the bleaching chemicals subject to the sales/use tax, despite the International Paper decision.
In both lawsuits, GP filed motions for summary judgment asking the court to grant it refunds for payment of sales taxes on the bleaching chemicals during the tax years 2003 through 2008. In its motions, GP asserted that it agreed to pay taxes on the bleaching chemicals in 1984 because the bleaching chemicals were not further processed into pulp or paper products during the manufacturing process in use at that time. However, in the mid-1990s, GP changed it bleaching process to one which was designed to and did in fact further process the chemicals into tangible personal property for subsequent sale at resale. GP urged that the 1984 Agreement only applied to materials used in the manufacturing process utilized in 1984 at the time that document was confected and did not provide for the continued taxation of materials that would be further processed into property for sale at retail under a different manufacturing process.
In support of the motions for summary judgment, GP attached the following documents to its memorandum: (1) the affidavit of Timothy A. Carlson, its director and senior counsel, who provided the procedural background of the parties' dispute, and to whose affidavit was attached documentation pertaining to GP's unsuccessful refund request from the City/Parish and its successful appeal of the Louisiana Department of Revenue's refund denials for the purchases of the bleaching chemicals at issue; (2) the affidavit of Barry Covington, GP's production manager for the Port Hudson facility; and (3) the affidavit of Dr. William Howard Daly, a chemistry professor.
Mr. Covington, a chemical engineer, attested that he has been involved in the pulp and paper industry for approximately 28 years, working mainly for International Paper and GP. According to Mr. Covington, GP uses the "Kraft Process" which utilizes subsequent bleaching processes to properly color the paper. He attested that while the Kraft Process has been in place since the Port Hudson facility opened, in the mid-1990s, the bleaching process underwent a significant change. According to Mr. Covington, at that time, GP switched from a chlorine-based bleaching process to a different bleaching process described in detail in his affidavit, which was utilized by the GP Port Hudson facility during the taxable periods from 2003 through 2008. Mr. Covington attested that the current bleaching process utilized by GP is the industry standard process which conforms *20 to that of other manufacturers, including the process undertaken by International Paper at its Bastrop, Louisiana paper mill. Mr. Covington stated that the bleaching processes used by International Paper and GP at their respective facilities are substantially consistent and similar.
Mr. Covington stated that during the Kraft Process, paper products are manufactured from wood chips, beginning with a cooking process to remove or dissolve a portion of lignin, a chemical compound which gives wood pulp its brown color. During the bleaching process, oxidation occurs when oxygen atoms derived from the bleaching chemicals combine with the lignin; the oxidized lignin gives the paper its white color. According to Mr. Covington, oxidized lignin, and therefore, the oxygen atoms contributed by the bleaching chemicals, remain a part of the final paper products GP produces at the Port Hudson facility; the bleaching chemicals benefitted GP's paper products; those chemicals were recognizable and identifiable components of the paper products; and those chemicals were purchased for the purpose of inclusion in GP's paper products.
Dr. Daly, who has taught chemistry at LSU since 1966 and who has been qualified in the past an as expert in court in matters dealing with the application of the further processing exclusion in connection with the polymer industry, described GP's bleaching process in detail. He attested that he read the International Paper decision, and that the standard bleaching process, including the use of the bleaching chemicals as necessary and required steps in the manufacture of white paper products, is substantially consistent with and similar to that undertaken by International Paper at its Bastrop facility and GP at its Louisiana facilities.
In his affidavit, Mr. Carlson attested that in the 1984 Agreement, pulp and paper chemicals were organized into three categories based on the acid (sulfite) manufacturing process in use in 1984. He stated that the 1984 Agreement did not address any future switch by GP from the old manufacturing process to a different manufacturing process. Instead, the 1984 Agreement addressed only the chemicals purchased by GP for the manufacturing process in use by GP in 1984 and did not provide for continued taxation of materials that, under a different manufacturing process, would be further processed into tangible personal property for subsequent sale at retail.
Based on this evidence and the Supreme Court's decision in International Paper , GP argued that the City/Parish could not dispute that the bleaching chemicals are excluded from the sales tax because they are "materials for further processing into articles of tangible personal property for sale at retail."[3] It further insisted that the 1984 Agreement did not bar its refund claim because its current bleaching process was not provided for in the agreement, those processes could not have been contemplated by the parties, and the 1984 Agreement could not be extended by implication to include the change in manufacturing process. According to GP, the 1984 Agreement extended only to the bleaching process in use at the time the agreement was confected (a chlorine-based process during which the bleaching chemicals were not further processed into tangible personal property for subsequent sale at retail) and does not extend to the current bleaching process, during which the bleaching *21 chemicals are in fact further processed into pulp and paper products. Thus, GP asserted, the City/Parish could not present any evidence to show that the current bleaching processes, adopted by GP in the mid-1990s, are within the scope of the 1984 Agreement.[4]
In opposition to the motions for summary judgment, the City/Parish relied solely on the 1984 Agreement at the hearing on the motion for summary judgment, submitting that document and the affidavit of its Revenue Manager, Tifani B. Delapasse, who attested to the authenticity of the document. The City/Parish took the position that GP remains bound by the terms of the 1984 Agreement specifically identifying the chemicals as being subject to the imposition of local sales taxes. It maintained that GP can offer no evidence to show that the 1984 Agreement is no longer valid and enforceable and insisted that GP's reliance on the International Paper case in a somewhat similar but factually different case as providing authority for GP to unilaterally breach the terms of that agreement is misplaced.
Following a hearing, the trial court determined that GP was entitled to summary judgment on its refund claims based on the further processing exclusion, La. R.S. 47:301(10)(c)(i)(aa), and Louisiana Supreme Court precedent. Specifically, the court found GP's purchase of the bleaching chemicals met all the criteria to qualify as non-taxable materials for further processing: (1) they became recognizable identifiable components of the end product; (2) they are beneficial to the end product; and (3) they are materials for further processing and as such were purchased with the purpose of inclusion in the end product. On July 20, 2017, the court signed a judgment granting GP's motion for summary judgment in suit Number 584,982 decreeing that GP is entitled to recover $1,576,182.39 plus interest through April 30, 2017, in the amount of $662,771.84, with interest running until the date of payment. The court also granted GP's motion for summary judgment in suit number 603,842 decreeing that GP is entitled to a refund in the amount of $1,695,106.86, plus interest in the amount of $504,516.41 through April 30, 2017, with interest continuing to run until the date of payment.[5]
This suspensive appeal, taken by the City/Parish, followed.
SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Crosstex Energy Services, LP v. Texas Brine Company, LLC, 2017-0895 (La. App. 1 Cir. 12/21/17), 240 So.3d 932, 935, writ denied, 2018-0145 (La. 3/23/18), 238 So.3d 963. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).
The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for *22 summary judgment, the mover's burden on the motion does not require him to negate all essential claims of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).
Appellate courts review evidence de novo using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Crosstex Energy Services, LP, 240 So.3d at 936. Thus, appellate courts ask the same questions: whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Id. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Id.
DISCUSSION
GP submitted evidence in support of its motion for summary judgment that during the taxable period, it used the same bleaching chemicals and the same bleaching process as International Paper did at the time the Supreme Court rendered its 2008 decision in the International Paper . It also offered evidence that the use of the bleaching chemicals meets all of the criteria identified by the Louisiana Supreme Court in the International Paper decision to qualify for the further processing exclusion. Additionally, it offered evidence showing that after it entered into the 1984 Agreement in which it agreed to the taxability of the bleaching chemical purchases, it changed its manufacturing process to comport with the industry wide practice and the process utilized by International Paper. GP's chief counsel attested that the 1984 Agreement addressed only the chemicals purchased by GP for the manufacturing process in use by GP in 1984 and did not provide for the continued taxation of material that, under a different manufacturing process, would be further processed into tangible personal property for subsequent sale at retail.
The City/Parish has made no attempt to refute any of this evidence. Instead, it contends that the 1984 Agreement, executed to resolve a dispute between GP and the City/Parish regarding the taxability of the bleaching chemicals, clearly and unambiguously provides that GP's future purchases of the bleaching chemicals are subject to the imposition of sales tax. The City/Parish argues that the 1984 Agreement constitutes the law between the parties, and regardless of the International Paper decision, GP is not entitled to judgment as a matter of law.
Alternatively, the City/Parish insists that there are genuine issues of material fact regarding the motives and intent of the parties in executing the 1984 Agreement. It takes the position that the 1984 Agreement could not be more clear as to the parties' intent in executing that document and leaves no room for interpretation. Ironically, the City/Parish points out, GP entered into the agreement in 1984 to keep it from having to maintain the very action pending before this court. The City/Parish maintains that GP's argument regarding the inapplicability of the 1984 Agreement is disingenuous and irrelevant as GP was arguing that the purchase of these same chemicals was not subject to the imposition of the sales tax by the City/Parish back in 1984 as well. The City/Parish urges that if GP's motive and intent in executing the 1984 Agreement *23 is deemed to be worthy of further examination by this court in order to determine what was or was not considered at that time by GP, such a determination in-and-of-itself presents a genuine issue of material fact precluding the granting of summary judgment in favor of GP. Finally, the City/Parish argues that the very existence of the 1984 Agreement mandates an outcome that is different from that reached by the Supreme Court in International Paper.
In International Paper, the Supreme Court noted that the Department of Revenue pointed out that it reviewed the taxability of the bleaching chemicals in the 1970s, and as a result a contract was entered into between the Department and a majority of paper manufacturers in the 1980s, including International Paper. This agreement basically stated that the chemicals used in the manufacture of white paper products were taxable, as the chemicals were primary used for bleaching/whitening of the pulp, as opposed to the chemical's incorporation with the final paper products. International Paper, 972 So.2d at 1124. The Court then noted in a footnote that over the objection of International Paper, a copy of purported contract from 1984 between the Department and International Paper was introduced at the hearing before the Board of Tax Appeals. The Board of Tax Appeals found that the agreement was irrelevant because the manufacturing processes currently utilized were materially different from those processes utilized in the mid-1980s. The Court stated that "[f]urthermore, the appellate court noted that the contract was not properly authenticated, and as such, the appellate court concluded that the contract constituted hearsay evidence. Thus, this contract is not a factor in the analysis of the issues presently before us." International Paper , Id. at n.6.
GP argues that the 1984 Agreement does not bar its refund claim for taxes paid on the bleaching chemicals during the taxable periods at issue in this case. It points out that the document clearly states that it was the parties' intent in executing the agreement to provide GP "with the means of paying its correct sales and use tax liability." (Emphasis added) GP urges that nothing in the 1984 Agreement suggests that the parties intended it to extend to subsequent bleaching processes that utilize the bleaching chemicals in a different process. GP notes that in the International Paper dispute, the appellate court pointed out that the Board of Tax Appeals considered a similar settlement agreement that International Paper had signed with the Louisiana Department of Revenue, but found that agreement to be irrelevant to the taxability issue as it was proven that International Paper utilized a newer, materially different bleaching process after that agreement had been confected. International Paper, Inc. v. Bridges, 42,023 (La. App. 2 Cir. 4/4/07), 954 So.2d 321, 326, rev'd, 2007-1151 (La. 1/16/08), 972 So.2d 1121.
Similarly, GP contends that the 1984 Agreement is irrelevant to the issue of the taxability of the bleaching chemicals because it applied only to raw materials used in an earlier and materially different chlorine-based bleaching process when admittedly, the chemicals were not further processed, while the current manufacturing processes do further process the chemicals into pulp and paper products. In short, GP maintains that the City/Parish cannot present any evidence to demonstrate that the current bleaching processes adopted by GP in the mid-1990s are within the scope of the 1984 Agreement, and it cannot point to any evidence to support its claim that the parties executing that agreement expected it to be applied to a substantially *24 different manufacturing process than that which was utilized at the time the 1984 Agreement was negotiated and confected.
We agree. The mover, GP, has submitted sufficient evidence to show that there are no genuine issues of material fact and that it is entitled to summary judgment as a matter of law. La. C.C.P. art. 966(D)(1). The City/Parish failed to produce factual support for its claim that the parties intended to settle the differences being asserted in this litigation in the 1984 Agreement. See La. C.C.P. art. 966(D)(1) ; Brown v. Drillers, Inc., 93-1019 (La. 1/14/94), 630 So.2d 741, 747. Louisiana Civil Code article 3076 provides that "[a] compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express." Thus, a compromise agreement extends only to those matters the parties expressly intended to settle and the scope of the agreement cannot be extended by implication. Brown, 630 So.2d at 748.[6] The City/Parish offered no evidence whatsoever supporting its claim that the parties intended for the 1984 Agreement to apply to taxability issues arising over 20 years later when GP utilized a different manufacturing process and the Louisiana Supreme Court settled the dispute between a taxpayer and the taxing authority over the taxability of these same chemicals under the same manufacturing process.
While the granting of summary judgment based on intent may be rare, it is appropriate when there is no genuine issue of material fact concerning the pertinent intent. Carter v. BRMAP, 591 So.2d 1184, 1189 (La. App. 1 Cir. 1991). A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Jackson v. City of New Orleans, 2012-2742 (La. 1/28/14), 144 So.3d 876, 882, cert. denied, --- U.S. ----, 135 S.Ct. 197, 190 L.Ed.2d 130 (2014). The City/Parish has not met its burden on the motion for summary judgment of producing factual support sufficient to establish the existence of a genuine issue of material fact regarding the applicability of the 1984 Agreement to the present tax dispute, and the trial court correctly ruled that GP is entitled to summary judgment as a matter of law on its refund requests.
CONCLUSION
Based on the foregoing, the judgment appealed from is affirmed. Costs of this appeal, in the amount of $2,629.00, are assessed to the appellant, City of Baton Rouge and Parish of East Baton Rouge.

The two petitions were consolidated in the trial court on October 26, 2016.

Prior to filing suit, GP filed requests for refunds with the City/Parish, which were denied by the City/Parish. Following a redetermination hearing, the City/Parish again disallowed GP's refund requests.

In its memorandum, GP pointed out that after the Supreme Court issued the International Paper decision, the City/Parish stopped collecting tax on its purchases of the bleaching chemicals.

GP also argued that even if the 1984 Agreement could be construed so broadly as to encompass its current manufacturing process, it must be rescinded because it was based on mutual error of fact.

The judgment decrees that the peremptory exception raising the objection of prescription filed by the City/Parish was withdrawn as moot. The record reflects that the City/Parish withdrew the objection at the outset of the hearing on the motion for summary judgment.

Brown dealt with the application of La. C.C. art. 3073, the predecessor to La. C.C. art. 3076. Louisiana Civil Code article 3076 reproduced the substance of article 3073 of the Louisiana Civil Code of 1870. Revision Comments-2007 (a).