STATE OF LOUISIANA

COURT OF APPEAL

*JEW*
*WRC by JEW*

FIRST CIRCUIT

* * * * * * *

2021 CA 0064

CRAIG AUCOIN

VERSUS

SHERIFF JERRY J. LARPENTER EX OFFICIO AS THE
TERREBONNE PARISH SHERIFF; TERREBONNE PARISH
CONSOLIDATED GOVERNMENT THROUGH THE PARISH
PRESIDENT GORDON E. DOVE; AND RICHARD "PETIE" NEAL

JUDGMENT RENDERED:  **SEP 2 0 2021**

* * * * * * *

Appealed from the
Thirty-Second Judicial District Court
In and for the Parish of Terrebonne • State of Louisiana
Docket Number 181770 • Division E

The Honorable Randall L. Bethancourt, Judge Presiding

* * * * * * *

Donna U. Grodner
Baton Rouge, Louisiana

COUNSEL FOR APPELLANT
PLAINTIFF—Craig Aucoin


William F. Dodd
W. Seth Dodd
Houma, Louisiana
    and
Gus A. Fritchie, III
Richard E. McCormack
New Orleans, Louisiana

COUNSEL FOR APPELLEE
DEFENDANT—Jerry J. Larpenter,
*ex officio* as the Sheriff of
Terrebonne Parish


Brian J. Marceaux
Julius P. Hebert, Jr.
Houma, Louisiana

COUNSEL FOR APPELLEE
DEFENDANTS—Terrebonne Parish
Consolidated Government and
Richard "Petie" Neal

* * * * * * *

*PMc by JEW*
*Mc Clendon J. concurs and assigns reasons*

BEFORE: McCLENDON, WELCH, AND CHUTZ, JJ.

**WELCH, J.**

The trial court granted summary judgment finding that defendant was not liable for plaintiff's claims. Plaintiff appealed. We reverse.

## FACTS AND PROCEDURAL HISTORY[1]

On July 22, 2017, Craig Aucoin was an incarcerated person housed at the Terrebonne Parish Criminal Justice Complex ("TPCJC") in Houma. Aucoin and nine other inmates were assigned to sleep on mattresses placed over "boats" on the floor of the "B-100" dormitory.[2] Aucoin was asleep on his mattress and boat, which were located along the edge of the second story tier of the dormitory, against the balcony railing. The bottom rail was approximately five to six inches above the landing, so that the top of Aucoin's mattress, when placed over the boat, was higher than the bottom rail. At 3:23 a.m., Aucoin rolled over the bottom rail of the balcony and fell from the second floor. He struck a metal table and then fell several more feet before landing on the ground floor on his stomach, sustaining injuries.

On January 12, 2018, Aucoin filed a petition for damages, naming as defendants Sheriff Jerry J. Larpenter, as the administrator of the TPCJC; Terrebonne Parish Consolidated Government ("TPCG"), as the employer of the health care providers working at TPCJC; and EMT Richard "Petie" Neal, as medical administrator of the TPCJC and employee of TPCG. In his petition, Aucoin alleged that the Sheriff required inmates to sleep on the floor of the second floor mezzanine with no safety harnesses or railing to prevent falls while sleeping, which they knew or should have known was unsafe; failed to provide safety precautions and a safe place to sleep; and that the risk to the sleeping inmate was

---

[1] We borrow these facts from our related opinion in this matter, **Aucoin v. Larpenter**, 2020-0792 (La. App. 1st Cir. 4/16/21), ___ So. 3d ___, ___, 2021 WL 1440202, at *1.

[2] Aucoin's petition described a "boat" as a "rigid plastic structure around seven (7) inches in height," which is placed directly on the floor, with a mattress placed over it.

open and obvious, which constitutes deliberate indifference. Aucoin alleged that he sustained numerous injuries in his fall that affected his back, shoulder, hip, leg, and head, and caused serious emotional distress and suffering; that he was denied certain medical care he requested; that he was provided inadequate medical care that was noncompliant with physician's orders, which exacerbated his injuries[3]; that he was confined to a wheelchair as a result of his injuries and was therefore vulnerable to attack by other inmates in the general population; and that the defendants exhibited wanton or reckless disregard, or malice or willfulness to cause injury, and violated his constitutional rights as an inmate confined to prison. Aucoin also asserted that he had completed multiple medical grievances at the time suit was filed.

The Sheriff filed an answer in response to Aucoin's petition, and thereafter, filed a motion for summary judgment on the issue of liability. The Sheriff argued that Aucoin would be unable to establish the duty and cause-in-fact elements of his negligence claim. Specifically, the Sheriff asserted that "[n]o duty existed requiring the Sheriff to protect Aucoin against the risk of falling off his boat...onto the floor directly below where Aucoin had placed his boat...in an open and obviously dangerous position...." The Sheriff further argued that "[b]ecause Aucoin disregarded the open and obvious danger of placing his boat and mattress on the second floor of the dormitory, level with the bottom rail over which he fell (while asleep) to the floor below, Aucoin's negligence and fault is the sole cause-in-fact of his injuries."

In opposition to the Sheriff's motion for summary judgment, Aucoin argued that "at a minimum[,] the Sheriff has a statutory duty to provide a safe place to ... sleep." Aucoin averred that the "authorities at [TPCJC had] reasonable cause to anticipate harm to [Aucoin] when the Sheriff allowed him or forced him to sleep

---

[3] The record is clear that Aucoin received medical care.

on the floor in a boat on the second floor next to a railing when he was observed for over an hour roll[ing] to the very edge." Aucoin further argued that the "danger was obvious. A correctional officer watching the video could readily see that sleeping on the second floor was unsafe and posed a risk of harm to anyone rolling in their sleep."

Following a January 29, 2020 hearing, the trial court granted the Sheriff's motion for summary judgment, dismissing Aucoin's claims against the Sheriff with prejudice. The trial court further ruled that Aucoin's motion to strike the Sheriff's motion for summary judgment was moot. The trial court signed a judgment in accordance with its ruling on February 28, 2020.

Aucoin filed a motion for and notice of appeal that improperly sought appellate review of both the February 28, 2020 judgment in favor of the Sheriff, and a March 5, 2020 judgment in favor of TPCG and Neal in a single appeal. This court noticed the lodging of the appeal of the February 28, 2020 judgment in favor of the Sheriff on January 5, 2021. Thus, we consider the February 28, 2020 judgment granting the motion for summary judgment filed by the Sheriff herein.[4]

## LAW

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. **Jones v. Anderson,** 2016-1361 (La. App. 1st Cir. 6/29/17), 224 So. 3d 413, 417. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of

---

[4] Aucoin previously filed an appeal of the March 5, 2020 judgment in favor of TPCG, as the employer of the health care providers working at TPCJC; and Richard "Petie" Neal, EMT, as medical administrator of the TPCJC and employee of TPCG. See **Aucoin,** ___ So. 3d at ___, 2021 WL 1440202, at *3. On February 5, 2021, Aucoin filed a motion to consolidate these related appeals, which this court denied by action dated February 11, 2021. See **Aucoin v. Larpenter,** 2020-0792 (La. App. 1st Cir. 4/16/21) (unpublished action).

law. La. C.C.P. art. 966(A)(3). The only documents that may be filed in support of or in opposition to the motion are the pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions.[5] See La. C.C.P. art. 966(A)(4).

The burden of proof rests on the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is then on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1). See also **Babin v. Winn-Dixie Louisiana, Inc.**, 2000-0078 (La. 6/30/00), 764 So. 2d 37, 39.

In reviewing a trial court's ruling on a motion for summary judgment, appellate courts review evidence *de novo* using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. **Georgia-Pacific Consumer Operations, LLC v. City of Baton Rouge**, 2017-1553, 2017-1554 (La. App. 1st Cir. 7/18/18), 255 So. 3d 16, 22, writ denied, 2018-1397 (La. 12/3/18), 257 So. 3d 194. Thus, appellate courts ask the same questions: whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. **Crosstex Energy Services, LP v. Texas Brine Company, LLC**, 2017-0895 (La. App. 1st Cir. 12/21/17), 240 So. 3d 932, 936, writ denied, 2018-0145 (La. 3/23/18), 238 So. 3d 963. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is

_____

[5] Nevertheless, the court shall consider any documents filed in support of or in opposition to the motion for summary judgment to which no objection is made. La. C.C.P. art. 966(D)(2).

5

material can be seen only in light of the substantive law applicable to the case. **Georgia-Pacific Consumer Operations, LLC,** 255 So. 3d at 22.

In this case, Aucoin's claim against the Sheriff is based upon negligence. Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability under general negligence principles. **Lemann v. Essen Lane Daiquiris, Inc.,** 2005-1095 (La. 3/10/06), 923 So. 2d 627, 632-33. For liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard of care (or the defendant owed a duty of care to the plaintiff) (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (or breached the requisite duty) (the breach element); (3) the defendant's substandard conduct was a cause-in-fact of the harm or the plaintiff's injuries (the cause-in-fact element); (4) the risk of harm was within the scope of protection afforded by the duty breached (the scope of the duty, scope of protection, or legal cause element); and (5) actual damages (damages element). See **Bellanger v. Webre,** 2010-0720 (La. App. 1st Cir. 5/6/11), 65 So. 3d 201, 207, writ denied, 2011-1171 (La. 9/16/11), 69 So. 3d 1149. See also **Lazard v. Foti,** 2002-2888 (La. 10/21/03), 859 So. 2d 656, 659. A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. **Bellanger,** 65 So. 3d at 207.

Here, the Sheriff specifically sought summary judgment on the basis that there was an absence of factual support for the duty element and the cause-in-fact element of Aucoin's negligence action. Therefore, our discussion herein is limited to those two elements. See La. C.C.P. art. 966(F).

*Duty*

A sheriff is charged with the safekeeping of prisoners in his jail, including those who are transferred there. See La. R.S. 15:704; La. R.S. 15:706(C); **Harper v. State, Department of Public Safety and Corrections,** 96-0047 (La. 9/5/96),

679 So. 2d 1321, 1322-23. The duty of a sheriff regarding the parish jail is stated in La. R.S. 15:704, which provides that "[e]ach sheriff shall be the keeper of the public jail of his parish, and shall by all lawful means preserve the peace and apprehend all disturbers thereof, and other public offenders." Our law provides that prison authorities owe a duty to exercise reasonable care to protect inmates from harm. This duty, however, is qualified by a requirement that penal authorities have reasonable cause to anticipate the harm: "penal authorities have a duty to use reasonable care in preventing harm after they have reasonable cause to anticipate it." **Norred v. Litchfield**, 2006-2156 (La. App. 1st Cir. 11/2/07), 977 So. 2d 1004, 1006, quoting **State ex rel. Jackson v. Phelps**, 95-2294 (La. 4/8/96), 672 So. 2d 665, 667. Whether the sheriff breached his duty will depend on the specific facts and circumstances of each case. **Id.** Thus, we must determine whether a genuine issue of material fact exists as to whether the Sheriff had "reasonable cause to anticipate harm" to Aucoin and, if so, whether he failed to use reasonable care in preventing such harm.

### *Cause-in-Fact*

The cause-in-fact element requires a determination of whether the harm would have occurred but for the defendant's alleged substandard conduct, or, when concurrent causes are involved, whether the defendant's conduct was a substantial factor in bringing about the harm. **Walker v. City of Indep. Police Dep't**, 2018-1739 (La. App. 1st Cir. 2/7/20), 296 So. 3d 25, 31. To satisfy the substantial factor test, the plaintiff must prove by a preponderance of the evidence that the defendant's conduct was a substantial factor in bringing about the harm. **Pontchartrain Nat. Gas Sys. v. Texas Brine Co., LLC**, 2018-1249 (La. App. 1st Cir. 12/30/20), 317 So. 3d 715, 745, writs denied, 2021-00386, 2021-00382 (La. 6/8/21), 317 So. 3d 323, 323.

## DISCUSSION

In support of his motion for summary judgment, the Sheriff attached: (A) the affidavit of Major Stephen N. Bergeron, the Assistant Warden for Operations of TPCJC, along with three attachments: (1) a CD containing the video surveillance tape of Aucoin's fall; (2) the roster of inmates housed in Dormitory B-100; (3) the Fire Marshal's inspection reports of the TPCJC; and (B) excerpts of Aucoin's deposition.

The evidence presented by the Sheriff in support of his motion for summary judgment establishes that in the summer of 2017, TPCJC was undergoing extensive renovations. Major Bergeron attested that during these renovations, some inmates were transferred or temporarily relocated from their assigned dormitories and cells, including Aucoin, who was transferred from dormitory D-100 to dormitory B-100.

According to the TPCJC's July 22, 2017 roster for dormitory B-100, there were twenty-eight inmates housed in the dormitory, nine of whom were assigned to sleep on the floor. Major Bergeron attested that those inmates had the choice of where to place their bedding on the floor. Aucoin testified that he, and no one else, decided where to place his bedding on the floor. Three inmates, including Aucoin, placed their bedding on the second floor (one inside of a second-floor cell); four placed their bedding on the first floor; and the remainder placed their bedding inside cells located on the first floor.

Video surveillance of dormitory B-100 of the morning of the incident shows that there were only four inmates sleeping on the first floor. Major Bergeron attested that the first floor of dormitory B-100 has the capacity to accommodate at least seven inmates' bedding, indicating that all three inmates sleeping on the second floor could have placed their bedding on the first floor. Despite the incident at issue occurring in July 2017, the Sheriff submitted four inspection

reports from the State Fire Marshal's Office dated February, June, August, and November 2017, showing that during those inspections, the Fire Marshall found no deficiencies with regard to overcrowding in dormitory B-100 as to those specific four months.

Aucoin testified that at one point during his stay in dormitory B-100, he had placed his bedding against the wall of the second floor rather than against the railing on the outer edge of the mezzanine, but that he moved his bedding next to the railing so he would not block a cell door. Aucoin testified that he knew his bedding put him at the same level as the lower horizontal bar of the mezzanine railing. Aucoin also testified that he knew there was a risk of falling and that it "was open and obvious to everybody." However, he testified that he was not concerned about falling over the railing because he had "never rolled off of a bed in [his] life."

Based on Aucoin's testimony that the five-to-six-inch gap between the bottom rail of the balcony and the floor of the second story landing presented an "open and obvious" risk of falling, the Sheriff argued in his motion for summary judgment that he had no duty to protect Aucoin against this allegedly unreasonably dangerous condition. The Sheriff is correct that under Louisiana law, a defendant generally does not have a duty to protect against an "open and obvious" hazard. See **Broussard v. State ex rel. Off. of State Bldgs.**, 2012-1238 (La. 4/5/13), 113 So. 3d 175, 184. However, the "open and obvious" inquiry is a part of the determination of the responsibility of a custodian of immovable property from injuries resulting from risks posed by his building, utilizing an analysis under La. C.C. arts. 2317, 2317.1, and 2322.[6]

---

[6] The person having custody of immovable property has a duty to keep such property in a reasonably safe condition. See La. C.C. arts. 2317, 2317.1, and 2322. Such persons are not responsible for all injuries resulting from any risk posed by his building, but, rather, only for those injuries caused by an unreasonable risk of harm to others. See **Broussard**, 113 So. 3d at 183. *(Cont. on next page)*

9

In contrast, the case before us presents an examination of Aucoin's injuries under a La. C.C. art. 2315 negligence analysis. The Sheriff conflates his duty to exercise reasonable care to protect inmates from harm (La. R.S. 15:704; La. R.S. 15:706(C); **Norred**, 977 So. 2d at 1006) with a building owner's liability for damages caused by a defective thing (La. C.C. arts. 2317, 2317.1, and 2322). The two duties are not the same. Furthermore, the true question presented in the instant case is not whether the gap between the bottom balcony rail and the floor of the second story presents an unreasonably dangerous condition that is "open and obvious" to all thereby relieving the Sheriff of his duty to protect his inmate Aucoin—the question is whether the Sheriff breached his duty to protect his inmate Aucoin from harm by failing to provide Aucoin with a safe place to place his bedding and by allowing Aucoin to choose to place his bedding on the second floor next to a railing.

In opposition to the Sheriff's motion for summary judgment, Aucoin submitted: (1) portions of his deposition; (2) the Sheriff's answers to interrogatories and responses to request for production of documents; (3)

---

Courts have developed a risk-utility balancing test to determine whether a condition is unreasonably dangerous. **Bufkin v. Felipe's Louisiana, LLC**, 2014-0288 (La. 10/15/14), 171 So. 3d 851, 856. To aid the trier-of-fact in making this factual determination, the Supreme Court has adopted a risk-utility balancing test, wherein the fact-finder must balance the gravity and risk of harm against individual societal rights and obligations, by considering four pertinent factors: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of its social utility or whether it is dangerous by nature. The second prong of this risk-utility inquiry focuses on whether the dangerous or defective condition is obvious and apparent. **Broussard**, 113 So. 3d at 184.

Under Louisiana law, a defendant generally does not have a duty to protect against an open and obvious hazard. **Broussard**, 113 So. 3d at 184. The apparentness of a defect is a question of fact. **Broussard**, 113 So. 3d at 183. In order for a hazard to be considered open and obvious, the hazard should be one that is open and obvious to all, *i.e.*, everyone who may potentially encounter it. **Broussard**, 113 So. 3d at 184. The plaintiff's knowledge or awareness of the risk created by the defendant's conduct should not operate as a total bar to recovery in a case where the defendant would otherwise be liable to the plaintiff. Instead, comparative fault principles should apply, and the plaintiff's "awareness of the danger" is but one factor to consider when assigning fault to all responsible parties under La. C.C. art. 2323. **Broussard**, 113 So. 3d at 188-89. In the absence of any material issues of fact, a court may determine by summary judgment that a defect is open and obvious and, therefore, does not present an unreasonable risk of harm. **Temple v. Morgan**, 2015-1159 (La. App. 1st Cir. 6/3/16), 196 So. 3d 71, 78, writ denied, 2016-1255 (La. 10/28/16), 208 So. 3d 889.

unsworn/unverified roster of inmates housed in dormitory B-100; and (4) unsworn/unverified screen-grabs from the video surveillance tape of Aucoin's fall.

Aucoin testified that due to overcrowding in dormitory B-100, he had to sleep on the floor. He stated that he had been sleeping on the second floor next to the railing for a month before he fell. Aucoin testified that the spot he chose for his bedding was the only area available where he would be out of the way, not obstructing walkways, and that was not located in the shower. Aucoin testified that no employee of TPCJC told him to move his bedding at any time prior to his accident.

Aucoin testified that on the morning of the incident, the officer surveilling the dormitory came into the dormitory at 3:00 a.m. and observed Aucoin hanging over the side of the railing at approximately 3:22 a.m. Aucoin testified that he understood that an officer yelled, "don't move," and that the officer started climbing the stairs prior to his fall. Aucoin argued that the Sheriff had reasonable cause to anticipate harm to Aucoin by allowing or forcing him to sleep on the second floor next to a railing. He averred that any correctional officer observing the surveillance monitors could readily observe that an inmate rolling in his sleep on the second floor next to the railing was unsafe and a posed a risk of harm.

Based on our *de novo* review of the evidence presented, we conclude that Aucoin produced factual support sufficient to establish the existence of a genuine issue of material fact as to whether the Sheriff met his duty to exercise reasonable care to protect Aucoin, an inmate in his jail, from harm. See **Norred**, 977 So. 2d at 1006.

Although Major Bergeron attested that Mr. Aucoin had alternative options to place his bedding—including the first floor—Aucoin's sworn testimony submitted in opposition to the Sheriff's motion demonstrates that a genuine issue of material fact exists as to whether Aucoin had any place to set up his bedding other than

11

along the edge of the second story tier balcony railing of dormitory B-100. The law is well settled that the trial court cannot make credibility determinations, evaluate testimony, or weigh conflicting evidence in making its decision whether to grant or deny a motion for summary judgment. **Pumphrey v. Harris**, 2012-0405 (La. App. 1st Cir. 11/2/12), 111 So. 3d 86, 91. Thus, we must reverse the trial court's grant of summary judgment in favor of the Sheriff.[7]

## DECREE

We reverse the trial court's February 28, 2020 judgment. Accordingly, all costs of this appeal, in the amount of $976.70, are assessed against the defendant/appellee, Jerry J. Larpenter, *ex officio* as the Sheriff of Terrebonne Parish.

**REVERSED.**

---

[7] While Aucoin assigned as error the trial court's failure to consider evidentiary objections he raised as to evidence offered, he failed to brief the issue and, therefore, it is considered abandoned under Louisiana Uniform Rules, Courts of Appeal, Rule 2—12.4(B)(4).

# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

# 2021 CA 0064

## CRAIG AUCOIN

## VERSUS

## SHERIFF JERRY LARPENTER EX OFFICIO AS THE TERREBONNE PARISH SHERIFF; TERREBONNE PARISH CONSOLIDATED GOVERNMENT THROUGH THE PARISH PRESIDENT GORDON E. DOVE; AND RICHARD "PETIE" NEAL

*PMc by JEW* ************************************************

**McClendon, J., concurs.**

I agree that a genuine issue of material fact exists as to whether Mr. Aucoin had any alternative location to place his bedding other than along the edge of the second story balcony railing of dormitory B-100. Accordingly, I concur with the result reached by the majority.