# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## NUMBER 2021 CA 0131

*U8hw/*

*CHH*

## DIANA ARMSTRONG AND THOMAS MOORE

### VERSUS

## ARCCO COMPANY SERVICES, INC.
## D/B/A ARCCO POWER SYSTEMS

Judgment Rendered: OCT 1 8 2021

Appealed from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket Number C576384

The Honorable Wilson Fields, Judge Presiding

\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| Richard Mary<br>Laura F. Mary<br>Baton Rouge, LA | Counsel for Plaintiffs/Appellants,<br>Diana Armstrong and Thomas Moore |
| Jill L. Craft<br>W. Brett Conrad, Jr.<br>Baton Rouge, LA | Counsel for Defendant/Appellee,<br>ARCCO Company Services, Inc.<br>d/b/a ARCCO Power Systems |

\*\*\*\*\*\*\*\*\*\*\*\*\*

BEFORE: WHIPPLE, C.J., PENZATO, AND HESTER, JJ.

*akp Penzato, J., concurs*

**WHIPPLE, C.J.**

This matter is before us on appeal by plaintiffs, Diana Armstrong and Thomas Moore, from a judgment of the trial court granting summary judgment in favor of defendant, ARCCO Company Services, Inc. d/b/a ARCCO Power Systems, and dismissing plaintiffs' claims with prejudice. For the reasons that follow, we affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

In March of 2006, Diana Armstrong and Thomas Moore ("plaintiffs") purchased a Model #PM401211 Coleman Powermate ("Coleman") 11.5 kw generator and accessories from ARCCO Company Services, Inc. d/b/a ARCCO Power Systems ("ARCCO") for their personal residence, which was subject to a manufacturer's warranty that expired three years after the purchase date or after 1,500 hours of use, whichever occurred first. According to plaintiffs, after the generator was installed, plaintiffs experienced their first major power outage in April or May of 2008. At that time, the generator failed after running a short time. Plaintiffs aver that ARCCO advised them that this failure was due to a defective oil sensor.

In May of 2008, plaintiffs entered into a maintenance agreement with ARCCO for ARCCO to perform full-service maintenance of the generator. Following a full-service maintenance appointment, ARCCO contacted plaintiffs on June 10, 2008, and advised that a service technician would be replacing the oil sensor switch. Later that month, plaintiffs were contacted by ARCCO and advised that a service technician would be coming to their home to replace the oil sensor switch and perform annual preventative maintenance. In early August 2008, plaintiffs experienced a power outage, and the generator failed after operating for only a few minutes. Plaintiffs contacted ARCCO, and, upon inspection by

ARCCO, were advised that the failure was caused by a missing soft start switch on plaintiffs' air conditioner.

On September 1, 2008, Hurricane Gustav struck Baton Rouge, causing plaintiffs to lose power again. Plaintiffs aver that although the generator started, the engine was running "very rough" and was "bogged down," so plaintiffs used it sparingly until it stopped working completely on September 4, 2008. On September 6, 2008, plaintiffs were advised by ARCCO's service technician that the generator's failure was due to low gas pressure caused by an improper gas meter or regulator. ARCCO service technicians returned on September 11, 2008, and replaced the spark plugs, which allowed the generator to run until September 13, 2008, when power was restored. However, in late September 2008, plaintiffs experienced a short-term power outage during which the generator did not come on.

Plaintiffs aver that they ultimately learned: that the generator's gas plumbing was incorrect; that the regulator was of insufficient capacity; that a second regulator was required downstream; that the meter was insufficient to provide gas to the generator; that ARCCO had not obtained the building, electrical, or plumbing permits required for installation; and that the generator was not in compliance with regulations regarding the generator's distance from the home and elevation. According to plaintiffs, ARCCO eventually advised them that it would not make restitution for the generator or honor the warranty. Thereafter, on March 16, 2009, plaintiffs filed the instant suit against ARCCO, seeking $12,739.40 in damages and attorney's fees, interest, and costs for ARCCO's failure to honor the warranty and negligent installation of the generator.

On June 1, 2020, ARCCO filed a motion for summary judgment seeking dismissal of plaintiffs' claims for breach of contract, contending: that the only warranty for the generator was the warranty provided by the manufacturer,

3

Coleman; that ARCCO provided no installation warranty as plaintiffs hired their own electrician and plumber to install the generator; and that the only contract entered into with plaintiffs was a maintenance contract, which expressly provided that ARCCO did not warrant the generator. ARCCO contended that accordingly, no material issue of fact remained as to plaintiffs' claims for breach of any contract with plaintiffs. ARCCO further denied that it was the installing contractor and contended that it provided no warranty on installation. In support of its motion for summary judgment, ARCCO submitted its answers to interrogatories and excerpts of the deposition testimony of ARCCO Chairman Bruce Smith, plaintiffs, Diana Armstrong and Thomas Moore, and ARCCO technicians, Dennis Bourge and Troy Hebert.

On July 30, 2020, plaintiffs likewise filed a motion for summary judgment, contending that no material issues of fact remain and that they were entitled to a judgment in their favor against ARCCO as a matter of law. In support, plaintiffs attached a "Memorandum in Support of [their] Motion for Summary Judgment and in Opposition to [ARCCO's] Motion for Summary Judgment."[1] Plaintiffs contend that the evidence set forth in support of their motion establishes that: ARCCO contracted to supply and install a backup generator for plaintiffs; that as part of the installation ARCCO performed a test of the gas flow to the generator; that the test showed that the gas flow was below the manufacturer's recommended rate, and if the generator was operated at that rate of flow, it would run hot and be damaged. Plaintiffs contend this is exactly what happened. (R. 206). Attached to plaintiffs' memorandum were: the affidavit of Jack Millican, ARCCO sales representative; the February 20, 2006 ARCCO Power Systems quote; the affidavit of Fred

---

[1]Although plaintiffs' memorandum in opposition to ARRCO's motion for summary judgment and supporting documentation was filed in a combined pleading in support of plaintiffs' motion for summary judgment, the opposition was nonetheless filed in compliance with LSA-C.C.P. art. 966(B)(2). ("Any opposition to the motion and all documents in support of the opposition shall be filed ... not less than fifteen days prior to the hearing on the motion.")

Robillard, a master plumber who inspected the unit; the fuel hookup instructions from the Coleman's owner's manual; the Installation Certification & Start-Up Inspection Report completed by ARCCO technician Dennis Bourge; excerpts of the deposition testimony of Troy Hebert and Diana Armstrong; and an opposition to ARCCO's statement of uncontested facts.

ARCCO's motion for summary judgment was heard by the trial court on August 17, 2020.[2] At the conclusion of the hearing, the trial court granted ARCCO's motion for summary judgment.[3] Thereafter, the trial court signed a judgment on September 1, 2020, granting ARCCO's motion for summary judgment and dismissing plaintiffs' claims with prejudice.

Plaintiffs now appeal the September 1, 2020 judgment, contending that the trial court erred in granting ARCCO's motion for summary judgment where material issues of fact remain as to: (1) whether ARCCO was responsible for installation of the generator and gas; (2) whether, in the event it is determined that ARCCO was not responsible for installation of the gas, ARCCO was responsible for knowingly installing the generator with insufficient gas pressure; and (3) whether ARCCO was liable to plaintiffs for installing the generator with insufficient gas pressure, which would not allow the generator to properly operate and which would cause damage to the generator.[4]

---

[2]According to an August 5, 2020 minute entry, plaintiffs' motion for summary judgment was set for hearing on September 28, 2020.

[3]The judgment indicates that the matter was heard via "Zoom."

[4]Following the lodging of this appeal, a rule to show cause order was issued *ex proprio motu* by this court, ordering the parties to show cause by briefs why the appeal should not be dismissed as premature. After considering the briefs submitted by plaintiffs and ARCCO, we hereby recall the rule to show cause order and maintain the appeal.

## SUMMARY JUDGMENT

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Georgia-Pacific Consumer Operations, LLC v. City of Baton Rouge, 2017-1553 (La. App. 1st Cir. 7/18/18), 255 So. 3d 16, 21, writ denied, 2018-1397 (La. 12/3/18), 257 So. 3d 194. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(A)(3). In reviewing a trial court's ruling on a motion for summary judgment, an appellate court reviews the evidence *de novo* using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Bourg v. Safeway Insurance Company of Louisiana, 2019-0270 (La. App. 1st Cir. 3/5/20), 300 So. 3d 881, 888.

The initial burden of proof is on the party filing the motion for summary judgment. LSA-C.C.P. art. 966(D)(1). If the mover will not bear the burden of proof at trial on the issue raised in the motion for summary judgment, the mover is not required to negate all essential elements of the adverse party's claim, action, or defense. LSA-C.C.P. art. 966(D)(1). However, the mover must demonstrate the absence of factual support for one or more of the elements of the adverse party's claim. LSA-C.C.P. art. 966(D)(1). The mover can meet this burden by filing supporting documentary evidence with its motion for summary judgment, consisting of pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, stipulations, and admissions. LSA-C.C.P. art. 966(A)(4). The mover's supporting documentary evidence must be sufficient to prove the essential facts necessary to carry the mover's burden. Thus, in deciding a motion for summary judgment, the court must first determine whether the supporting documents presented by the mover are sufficient to resolve

all material factual issues. If not, summary judgment must be denied in favor of a trial on the merits. Crockerham v. Louisiana Medical Mutual Insurance Company, 2017-1590 (La. App. 1st Cir. 6/21/18), 255 So. 3d 604, 608.

Once a motion for summary judgment is made and properly supported, the burden shifts to the non-moving party to produce factual support, through the use of proper documentary evidence attached to its opposition, which establishes the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. LSA-C.C.P. art. 966(D)(1). If the non-moving party fails to produce sufficient factual support with its opposition which proves the existence of a genuine issue of material fact, LSA-C.C.P. art. 966(D)(1) mandates the granting of the motion for summary judgment. Jenkins v. Hernandez, 2019-0874 (La. App. 1st Cir. 6/3/20), 305 So. 3d 365, 371, writ denied, 2020-00835 (La. 10/20/20) 303 So. 3d 315.

Material facts are those that potentially ensure or preclude recovery, affect the litigant's success, or determine the outcome of a legal dispute. Daniels v. USAgencies Casualty Insurance Company, 2011-1357 (La. App. 1st Cir. 5/3/12), 92 So. 3d 1049, 1055. Because it is the substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Georgia-Pacific Consumer Operations, LLC v. City of Baton Rouge, 255 So. 3d at 22.

## DISCUSSION

ARCCO's motion for summary judgment sought dismissal of plaintiffs' breach of contract claims against it under the manufacturer's warranty, contending that Coleman, not ARCCO, was the manufacturer, and that the service agreement entered into by plaintiffs and ARCCO in May of 2008 expressly provided that ARCCO did not warrant the generator. ARCCO denied that it was the installing contractor or that it provided a warranty on installation.

7

In support of its motion, ARCCO submitted the Coleman manufacturer's warranty, which provides that "Coleman Powermate warrants this product to the original consumer against defects in material and workmanship for a period of 3-years or 1500 hours, whichever occurs first, from the date of purchase and **is not transferrable**." (Emphasis added.) ARCCO also submitted a "Generator Scheduled Maintenance Proposal/Agreement" ARCCO entered into with plaintiffs in May of 2008, which provides that "ARCCO Power Systems does not warrant, and assumes no warranty for the quality, condition, and reliability of said equipment... ."

In opposition to ARCCO's motion for summary judgment, plaintiffs did not set forth any evidence upon which they could rely to prove that a genuine issue of material fact remained as to whether plaintiffs could prevail against ARCCO under the terms of the manufacturer's warranty or its maintenance service agreement. Thus, on *de novo* review, we find no error in the trial court's grant of summary judgment dismissing plaintiffs' claims against ARCCO for breach of contract under the manufacturer's warranty or the maintenance service agreement. However, in their assignments of error on appeal, plaintiffs contend that the trial court erred herein in granting summary judgment and dismissing plaintiffs' claims, including plaintiffs' negligence claims, in their entirety. Specifically, plaintiffs contend that material issues of fact remain as to their claims against ARCCO for negligent installation, including whether ARCCO was responsible for installation of the generator and gas and whether ARCCO knowingly installed the generator with insufficient gas flow.

We note that although captioned, "Suit On Contract," plaintiffs' petition also sets forth claims for damages against ARCCO for negligent installation. Therein, plaintiffs specifically allege that ARCCO had not obtained the building, electrical or plumbing permits required for installation, the installation of the generator was

8

not in compliance with regulations regarding the generator's distance from the home or elevation from the ground, and the generator was installed without a proper meter or regulator and with insufficient gas flow. Accordingly, plaintiffs contend that the trial court erred in dismissing these claims where genuine issues of material fact remain as to ARCCO's negligence in installing the generator. We agree.

The caption of a pleading does not control. Rather, courts are obligated to look through the caption of pleadings in order to ascertain their substance. Smith v. Cajun Insulation, Inc., 392 So. 2d 398, 402 n.2 (La. 1980); Southeastern Louisiana University v. Cook, 2012-0021 (La. App. 1st Cir. 9/21/12), 104 So. 3d 124, 127-128. Every pleading is to be so construed as to do substantial justice, and regardless of the parties' interpretation of the caption of plaintiffs' pleading, courts will look to the import of a pleading and will not be bound by its title. LSA-C.C.P. art. 865; Lewis v. Louisiana Department of Public Safety & Corrections, 2018-0407 (La. App. 1st Cir. 11/2/18), 265 So. 3d 16, 20.

Thus, although plaintiffs' petition was styled as a "Suit on Contract," considering the allegations asserted therein, we must also determine whether summary judgment was properly granted dismissing plaintiffs' claims that ARCCO was responsible for installation of the generator and was negligent in installing the generator with insufficient gas pressure.[5]

In support of its motion for summary judgment, ARCCO submitted the deposition testimony of Bruce Smith, the chairman of ARCCO, who testified that the ARCCO quote included the price of a plumber and electrician and that

---

[5]Pursuant to LSA-C.C.P. art. 966(F), summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time. Thus, even if we were to accept ARCCO's characterization of plaintiffs' petition as merely a suit for breach of contract, we note that ARCCO's motion for summary judgment only sought dismissal of plaintiffs' claims for breach of contract. However, the judgment dismissed plaintiffs' claims in their entirety. On this basis, and for the reasons further stated herein, we conclude the trial court erred in doing so.

plaintiffs paid the plumber and electrician.[6] He was not sure if the plaintiffs had ever met the plumber and electrician. He understood that technicians made numerous trips to plaintiffs' home and that a gas flow issue kept "coming up." Based on what was reported to him, he thought the problem was a gas flow issue. He stated that the water column should have seven to eleven inches of water, and that it was measuring three to four inches of water. He testified that with the gas flow running so "lean," the unit probably warped or melted the tip of the spark plug and the unit would not run correctly with too much or not enough gas. Smith testified that ARCCO was responsible for the warranty start-up of the unit. He also stated that if the gas flow was not correct for this unit, it was the plumber's responsibility to get the gas flow problem corrected with the gas company. Smith testified that the warranty start-up inspection report is a form provided by the manufacturer, which is sent to the manufacturer to initiate the warranty on the unit.

ARCCO also submitted the deposition testimony of plaintiff, Diana Armstrong, who testified that the ARCCO sales representative, Jack Millican, told her which plumber and electrician ARCCO uses and that she was not given an option of choosing a different one. She was instructed to write three different checks: one for ARCCO Company services, one to Scott Bount, the electrician who performed work on the unit, and one for the plumber, which she had to leave blank because, at that point, she did not know who ARCCO contacted to perform the plumbing services. She testified that ARCCO performed the installation of the generator. She further testified that although she and her husband met the electrician, they did not meet or ever see the plumber. She testified to numerous service calls and stated that the unit never ran properly. She stated that on September 6, 2008, ARCCO technician, Troy Hebert, came out to inspect the unit and advised them that the unit was getting insufficient gas flow, which was causing

---

[6]Smith also testified that the manufacturer, Coleman, went bankrupt at some point after plaintiffs purchased the generator.

the problems. She further testified that when the unit was initially installed, Millican's brother-in-law, who worked at Entergy, was called in to change the meter at the initial installation to make the unit work properly.

ARCCO also submitted the deposition testimony of plaintiff, Thomas Moore. Moore likewise testified that Millican, the ARCCO sales representative, secured the electrician and plumber for the job, and that they were paid with a separate check. He stated that ARCCO told him that there was a gas pressure problem when they installed the unit. He stated that initially, they could not get it to start and when it did start, it did not run very well so they shut it down. At that point, they called someone from Entergy to come out and replace the gas meter. He testified that during the installation, no one told him that he needed to contact a plumber.

ARCCO further submitted the deposition testimony of ARCCO technician, Dennis Bourge, who was present during installation and who completed the Installation Certificate & Start-Up Inspection Report. Bourge testified that he informed Millican that the gas pressure was "a three" at start-up. He stated that he understood that Millican would be contacting a plumber to increase the pressure or talk to the "energy people."

ARCCO also presented the deposition testimony of their technician, Troy Hebert. Hebert identified a September 6, 2008 service form, where he indicated that the generator had low gas pressure. He stated that the low gas pressure would have to come from the gas company because it comes from the meter to the generator and that there must be between seven to eleven inches of water column for the generator to run. He stated that the technicians are not supposed to touch the gas meters. He further testified that when they perform regularly scheduled maintenance on these units, it does not necessarily include checking the gas pressure.

11

In opposition to ARCCO's motion, plaintiffs relied on the affidavit of Jack Millican and a copy of the ARCCO quote for the generator at issue herein. Millican attested that he was employed by ARCCO at the time plaintiffs purchased the Coleman generator; that he prepared and presented the quote to plaintiffs; that the quote was an "all-inclusive package which included both the purchase of the Coleman generator and the installation (including plumbing and electrical) of the Coleman generator"; that he had authority from ARCCO to present and agree to the quote; and that ARCCO subcontracted with independent contractors, Blount Electric and Webb Plumbing, to perform the electrical and plumbing work during installation of the generator.

The itemized quote provided as follows:

| | |
|---|---|
| Model #PM401211 Coleman 11 5kw Generator with Honda engine | $3495.00 |
| Zenith Automatic Transfer Switch Model #074-0004SP | $995.00 |
| Warranty Start-Up | $350.00 |
| Battery | $50.00 |
| Electrical with slab, delivery and set up | $1550.00 |
| Plumber (gas connection) | $625.00 |
| **Total including tax (plumbing and electrical are not taxable)** | **$7391.60[7]** |

The copy of the quote presented also bore handwritten notes indicating that the total was broken down into three separate amounts submitted in three checks and included a taxable total without the plumbing and electrical.

Plaintiffs further submitted the affidavit of a master plumber, Fred Robillard. Robillard attested that he has experience installing gas for power generators; that he inspected the Coleman unit at issue and the original installation of that unit; that in connection with the original installation of the unit, no plumbing or electrical permits were obtained; that the original installation of the unit was performed

---

[7]The sum of the numbers set forth in the itemized quote is $7,065.00, not $7,391.60. However, if the total shown includes tax, the tax is not evident from the itemized quote.

12

improperly because there was insufficient gas flow to the unit; that the original installation of the unit was not performed in accordance with city/parish regulations because the unit was not at a proper height and did not have sufficient clearance from plaintiffs' home; that it is possible that running a generator such as the one at issue herein with gas flow as originally installed (which was improper) can cause damage to the unit; and that according to the Coleman Owner's Manual, if the gas volume was, in fact, as shown on the attached start-up checklist, the Coleman unit should not have been operated because it was not being operated within factory specifications.

In connection with Robillard's affidavit, plaintiffs also submitted page 14 of the owner's manual, which sets forth the instructions for fuel hook-up and states:

> When supplying natural gas as the operating fuel, provide fuel with a minimum of **1000 BTU/ft.³ at inlet pressures between 7" and 11" of water column (4 – 6 oz).** Failure to meet these minimums will cause the generator to run poorly and/or may limit output to values below nameplate value. If fuel with these quantities is not available, a low calorific fuel system kit may be required at additional cost. Contact the customer service center to determine if a kit is required in cases of inadequate fuel quality.

Plaintiffs also submitted the Installation Certification & Start-Up Inspection Report, which was performed and completed by ARCCO technician, Dennis Bourge, who indicated that the fuel type was natural gas and that the gas pressure was three ounces. The Installation Certification & Start-Up Inspection Report completed by ARCCO further provides:

> This is verification (by installer only) that the installation is completed and is in conformance with the National Electrical Code and meets local electrical and building codes. It also meets the standards of the installing agent. The buyer signature is only to verify that the work has been completed and in no way verifies the meeting of electrical or building codes.

Plaintiffs further submitted excerpts of the deposition testimony of ARCCO technician, Troy Hebert, who attested that it is a problem any time the meter is below seven to eleven inches of water. He stated this situation makes the engine

13

run rough and can cause serious damage to the unit. He testified that they should check the gas pressure at start-up and that if he went out to perform a start-up and the gas pressure was low, he would "shut it off" then and there. He concluded that the gas pressure issue needed to be addressed.

On *de novo* review, we find that the above evidence submitted by plaintiffs in opposition to ARCCO's motion for summary judgment clearly shows that numerous material issues of fact exist as to plaintiffs' claims of negligence on the part ARCCO, including whether ARCCO was responsible for installation of the generator and whether ARCCO is liable for knowingly installing the generator with insufficient gas pressure. We conclude that these issues preclude summary judgment. Accordingly, to the extent that the September 1, 2020 judgment of the trial court dismissed plaintiffs' negligence claims against ARCCO for its purported negligence in installing the generator, that portion of the judgment must be reversed.

## CONCLUSION

For the above and foregoing reasons, the September 1, 2020 judgment is affirmed in part and reversed in part. This matter is remanded to the trial court for further proceedings in accordance with our rulings herein.

Costs of this appeal are assessed to the defendant/appellee, ARCCO Company Services, Inc. d/b/a ARCCO Power Systems.

**RULE TO SHOW CAUSE ORDER RECALLED; JUDGMENT AFFIRMED IN PART, AND REVERSED IN PART; AND REMANDED.**