McCLENDON, J.
The plaintiff appeals the trial court judgment that granted the defendants' motion for summary judgment and dismissed the plaintiff's claims with prejudice. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
On August 19, 2013, the plaintiff, Allison Juge, filed a Petition for Damages in Medical Malpractice, Negligence and Invasion of Privacy against the defendants, Springfield Wellness, LLC d/b/a Springfield Wellness Center Therapia Associates (Springfield) and Dr. Richard Mestayer, III. Therein, she alleged that on March 6, 2013, she paid $ 10,000.00 in advance for ten treatment sessions at Springfield for the treatment of her anxiety and post-traumatic stress disorder (PTSD) diagnoses.
*4 She further asserted that although she received ten intravenous co-enzyme therapy treatments, she did not receive any individualized or group therapy, psychotherapy, hypnotherapy, or counseling.[1] Ms. Juge further asserted that Dr. Mestayer billed her health insurance company for services he never performed. As a result, Ms. Juge contends that she has suffered injuries and damages, including exacerbation and aggravation of anxiety, depression, and PTSD, as well as loss of employment, loss of income, loss of enjoyment of life, mental anguish, and medical expenses.
In her petition Ms. Juge also asserted an invasion of privacy cause of action against Springfield only.[2] She alleged that, while at Springfield, she took a leave of absence from her position as a paralegal with the law firm of Beirne, Maynard & Parsons, L.L.P. (Beirne) and that Beirne requested information regarding the anticipated length of her short-term disability. She further contended that Springfield forwarded to Beirne private and confidential records that contained a diagnosis that Ms. Juge was "alcohol dependent," which misinformation resulted in her being fired from her position and caused her greater anxiety and depression. Ms. Juge maintained that the private and confidential information was disclosed to her employer without her consent and was intended by her to be disclosed only to her health care providers or their representatives and to her health and disability insurance carrier. Therefore, Ms. Juge urged that she suffered injuries and damages, including loss of employment, earnings, and income, with a loss of benefits, damage to her reputation, humiliation and embarrassment, mental anguish, and aggravation and exacerbation of her anxiety and depression.
On January 17, 2017, the defendants filed a motion for summary judgment, asserting that they were entitled to judgment as a matter of law. Particularly, with regard to Ms. Juge's first cause of action for medical malpractice and negligence, the defendants asserted that she had not produced or offered any expert testimony or expert reports as to the standard of care required of the defendants or that the alleged breach of the standard of care caused injury or damages to Ms. Juge. As to Ms. Juge's second cause of action, Springfield argued that, not only did Ms. Juge consent to the disclosure to her employer, she presented no records, documents, or other admissible evidence that substantiated her allegation that the alleged disclosure resulted in Ms. Juge's termination from employment. Rather, Springfield urged, Ms. Juge's termination was the result of a reduction in work force.
Ms. Juge opposed the motion for summary judgment, and following a hearing on March 20, 2017, the trial court took the matter under advisement.[3] On November 29, 2017, the trial court issued written Reasons for Judgment, granting the motion for summary judgment. On January 3, *5 2018, the trial court signed its judgment, and Ms. Juge appealed.
DISCUSSION
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Georgia-Pacific Consumer Operations, LLC v. City of Baton Rouge, 17-1553 (La.App. 1 Cir. 7/18/18), 255 So.3d 16, 21, writ denied, 18-1397 (La. 12/3/18), 257 So.3d 194 ; Crosstex Energy Services, LP v. Texas Brine Company, LLC , 17-0895 (La.App. 1 Cir. 12/21/17), 240 So.3d 932, 935, writ denied, 18-0145 (La. 3/23/18), 238 So.3d 963. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966A(3).
The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential claims of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. LSA-C.C.P. art. 966D(1).
Appellate courts review evidence de novo using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Georgia-Pacific Consumer Operations, LLC, 255 So.3d at 22. Thus, appellate courts ask the same questions: whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Id. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Id.
The Medical Malpractice Claim[4]
To establish a claim for medical malpractice, a plaintiff must prove the following by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) the defendant breached that standard of care; and (3) there was a causal connection between the breach and the resulting injury. LSA-R.S. 9:2794A; Schultz v. Guoth, 10-0343 (La. 1/19/11), 57 So.3d 1002, 1006. It is also well established that to meet the burden of proof in a medical malpractice action, the plaintiff generally is required to produce expert medical testimony as a matter of law. Fagan v. LeBlanc, 04-2743 (La.App. 1 Cir. 2/10/06), 928 So.2d 571, 575. Notably, the jurisprudence recognizes limited exceptions to the requirement of expert testimony in those instances where the claim arises out of an "obviously careless act" from which a lay person can infer negligence.[5]
*6 Pfiffner v. Correa, 94-0924 (La. 10/17/94), 643 So.2d 1228, 1233. Normally, in cases involving patients with complicated medical histories and complex medical conditions, causation is simply beyond the province of lay persons to assess without the assistance of expert medical testimony. See Pfiffner, 643 So.2d at 1234 ; Jackson v. Suazo-Vasquez, 12-1377 (La.App. 1 Cir. 4/26/13), 116 So.3d 773, 776. Thus, the jurisprudence has recognized that an expert witness is generally necessary as a matter of law to prove a medical malpractice claim. Fagan, 928 So.2d at 575.
Accordingly, the first issue before us is whether the alleged negligence in this case is an obviously careless act that infers negligence and does not require expert testimony. Upon our review of the record, and contrary to Ms. Juge's assertions, we find that this is not a case of obvious negligence where a lay person can infer fault and causation of an alleged injury without expert guidance. Ms. Juge's diagnoses of PTSD, anxiety, and depression involve complex medical issues, and expert medical testimony is necessary to determine the applicable standard of care, whether there was a breach of that standard of care, and whether the alleged breach was the cause of any injury to Ms. Juge.
In their motion for summary judgment and supporting documents, the defendants sufficiently pointed out that Ms. Juge did not submit, appropriately file, or otherwise timely introduce any medical affidavit or testimony that established the standard of care, that the defendants breached the standard of care, or a causal relationship between the alleged negligent acts and any damages. The defendants offered excerpts from their Requests for Production of Documents propounded in December of 2013 and Ms. Juge's responses thereto, their Interrogatories also propounded in December of 2013 and Ms. Juge's responses, and Ms. Juge's depositions, to show that Ms. Juge had no expert report from any medical provider. The burden then shifted to Ms. Juge to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the defendants were not entitled to judgment as a matter of law. See LSA-C.C.P. art. 966D(1).
In her opposition to the motion, Ms. Juge offered copies of her medical records from Integrated Behavioral Health, Inc., where she was treated by her psychiatrist, Dr. Leslie Lawrence; her medical records from her therapist, Paula Sheinberg, LCSW; her request to take the deposition of Dr. Harry Johnson, her internist; her requests to take the depositions of certain Springfield personnel and the defendants' response thereto; Dr. Mestayer's progress notes at Springfield and his billing statement; her compilation of notes from her stay at Springfield; and her own affidavit.[6] Ms. Juge asserted that the medical records sufficiently showed that the defendants' treatment exacerbated her condition and established deviations from the applicable *7 standard of care in the fields of psychiatry, psychology, and addictionology.[7]
Ms. Juge also alleged that Dr. Mestayer never once "treated" her, yet he billed her in excess of $ 11,000.00 for his "treatment." She alleged that her insurance company was fraudulently billed for services that were never performed, and in order to justify the intravenous co-enzyme treatment, her medical records were altered by labeling her an "alcoholic." However, the defendants maintain that Ms. Juge received the treatment that she requested and that the present matter is a billing dispute rather than a medical malpractice claim.
As a preliminary matter, we point out that after the hearing on the motion for summary judgment, Ms. Juge filed Plaintiff's Post-Hearing Memorandum with Supporting Affidavit of Dr. John J. Kokemor. Ms. Juge also attached to the memorandum a certified copy of Ms. Juge's medical records from Dr. Johnson, Ms. Juge's primary physician from 1996 to 2015.[8] The defendants filed an objection to the memorandum, but the record does not indicate that the trial court ruled on the objection. See LSA-C.C.P. art. 966D(2). Nonetheless, it does not appear that the trial court considered the post-trial memorandum or its attachments as no reference was made to Dr. Kokemor or Dr. Johnson in the trial court's Reasons for Judgment, and the trial court referred to Ms. Juge's admission that no expert report had been provided to rebut the motion for summary judgment. Moreover, LSA-C.C.P. art. 966B(2) provides that, unless extended by the court and agreed to by all of the parties, any opposition to the motion for summary judgment and "all documents in support of the opposition shall be filed and served ... not less than fifteen days prior to the hearing on the motion." Consequently, Dr. Kokemor's affidavit and the accompanying documents will not be considered herein.
At the hearing on the motion for summary judgment, Ms. Juge admitted that she had not produced any expert medical reports and relied only on the submitted medical records to prove a breach of the applicable standard of care by the defendants and that the alleged breach caused her injury. Ms. Juge was required to produce expert medical evidence sufficient to establish that she will be able to satisfy her evidentiary burden of proof at trial. Because Ms. Juge has failed to do so, she has failed to establish a genuine issue of material fact. Consequently, on our de novo review, we find that the trial court properly granted summary judgment dismissing Ms. Juge's medical malpractice and negligence claim.
The Invasion of Privacy Claim
The right of privacy involves the basic right of a person to be let alone in his private affairs. Roshto v. Hebert, 439 So.2d 428, 430 (La. 1983). Unwarranted invasion of a person's right of privacy may give rise to liability for the resulting harm. The determination of whether a person's conduct constitutes the tort of invasion of privacy depends on the facts and *8 circumstances of each case. Id. ; Bradix v. Advance Stores Company, Inc., 17-0166 (La.App. 4 Cir. 8/16/17), 226 So.3d 523, 530.
The tort of invasion of privacy is directed at redressing the damage which an individual suffers when legally recognized elements of his right to privacy have been violated. Tate v. Woman's Hosp. Foundation, 10-0425 (La. 1/19/11), 56 So.3d 194, 197. An actionable invasion of privacy occurs only when the defendant's conduct is unreasonable and seriously interferes with the plaintiff's privacy interest. The reasonableness of the defendant's conduct is determined by balancing the conflicting interests at stake, the plaintiff's interest in protecting his privacy from serious invasions, and the defendant's interest in pursuing his course of conduct. Jaubert v. Crowley Post-Signal, Inc., 375 So.2d 1386, 1389 (La. 1979). Courts have held that when a person consents to the release of information, there is no invasion of privacy. Tate, 56 So.3d at 198. Moreover, a defendant's conduct is reasonable and non-actionable, even though it may slightly invade a plaintiff's privacy if the action is properly authorized or justified by the circumstances. Parish Nat'l Bank v. Lane, 397 So.2d 1282, 1286 (La. 1981) ; Tatum v. New Orleans Aviation Bd., 11-1431 (La.App. 4 Cir. 4/11/12), 102 So.3d 144, 146-47, writ denied, 12-1847 (La. 11/9/12), 100 So.3d 838.
A tort of invasion of privacy can occur in four ways: (1) by appropriating an individual's name or likeness; (2) by unreasonably intruding on physical solitude or seclusion; (3) by giving publicity which unreasonably places a person in a false light before the public; and (4) by unreasonable public disclosure of embarrassing private facts. Alessi, 76 So.3d at 1143 ; Jaubert, 375 So.2d at 1388.
Ms. Juge does not suggest that Springfield appropriated her name or likeness or intruded on her physical solitude or seclusion, therefore eliminating the first two theories of invasion of privacy. In her reply brief, Ms. Juge argues that the disclosure of the false information falls under the third theory of recovery, or the "false light" invasion of privacy.[9] This cause of action arises from publicity which unreasonably places the plaintiff in a false light before the public. The publicity need not be defamatory in nature, but must be objectionable to a reasonable person under the circumstances and must contain either falsity or fiction. Brunner v. Holloway, 17-0674 (La.App. 1 Cir. 11/2/17), 235 So.3d 1153, 1161 ; Perere v. Louisiana Television Broadcasting Corp., 00-1656 (La.App. 1 Cir. 9/28/01), 812 So.2d 673, 676. Also, unlike a defamation action, it is not necessary that there be malicious intent on the part of the defendant. Perere, 812 So.2d at 676. A right to privacy in one's medical and prescription records is an expectation of privacy that society is prepared to recognize as reasonable. State v. Skinner, 08-2522 (La. 5/5/09), 10 So.3d 1212, 1219.
Ms. Juge asserted that during the course of her treatment at Springfield, her employer requested information regarding the anticipated length of her short-term disability. Ms. Juge alleged that, in response, Springfield forwarded to Beirne private and confidential records that contained a diagnosis that Ms. Juge was alcohol dependent, which was false. Ms. Juge *9 urged that Springfield's disclosure of her inaccurate medical records to her employer placed her in a false light and resulted in her termination. She argued that even if the disclosure was authorized, which she refutes, she never consented to the disclosure of false, fraudulent, and inaccurate information. Specifically, Ms. Juge emphatically denied checking off "alcohol abuse" on any of the forms presented to her by Springfield and asserted that any such check marks were forgeries. Ms. Juge makes the argument that Springfield had to justify the IV NAD treatments and the $ 10,000.00 charge for the treatments and, therefore, added false and inaccurate information to Ms. Juge's medical records.
In its motion for summary judgment, Springfield urged that Ms. Juge consented to the disclosure of her personal information to her employer, that the disclosure was not inaccurate, and that the disclosure was not the cause of her termination. Springfield submitted several documents in support of its argument.[10] We find that Springfield sufficiently pointed out the absence of factual support for one or more elements essential to Ms. Juge's invasion of privacy claim, and the burden shifted to Ms. Juge to produce factual support for her claim. In opposition, Ms. Juge relied on the same documents submitted for her first cause of action.
Our review of the record shows that Dr. Mestayer's progress notes for Ms. Juge indicated that she was at Springfield for increased alcohol consumption and that she suffered from "alcohol abuse." However, Ms. Juge continues to assert that although she used alcohol, she did not abuse alcohol. In her affidavit, she attested that she has no history of alcohol abuse and never stated to anyone at Springfield that she was alcohol dependent. Ms. Juge reported that she was seeking treatment for anxiety and PTSD. Nevertheless, Ms. Juge admitted to filling out a Psychological and Substance Abuse History form presented to her upon her admission to Springfield. Therein, Ms. Juge admitted alcohol use. The form contained the question, "What, if any, is a problem substance (substances) for you at present?" Ms. Juge reported "alcohol if any." Ms. Juge also admitted to signing an Adult Checklist of Concerns form, wherein "Alcohol use" was checked.[11]
Additionally, Ms. Juge admitted to signing a General Medical Records Release and Authorization for Use of Disclosure of Protected Information. However, in response to Springfield's Uncontested Statement of Material Facts regarding this form, Ms. Juge maintained that she did not authorize disclosure of her medical records to her employer and only authorized disclosure to her short-term disability insurer. Therefore, we must determine if *10 Springfield inappropriately released Ms. Juge's confidential medical records to Beirne.
Reviewing the admissible evidence regarding the motion for summary judgment, we find two different copies of the same General Medical Records Release and Authorization for Use of Disclosure of Protected Information signed on February 20, 2013, by Ms. Juge. One copy indicates that Ms. Juge checked off the authorization for the release of "all records." Otherwise, the form is blank. A second copy of the General Medical Records Release and Authorization for Use of Disclosure of Protected Information likewise has "all records" checked, but also contains check marks for the following:
The information may be used/disclosed for each of the following purposes:
? At my request (only the patient can check this box)
? For my health care
? For payment/insurance
? For employment purposes
? Other: ____________
We find that an issue of fact exists as to whether Ms. Juge authorized and consented to the disclosure of her confidential medical information to Beirne. However, while this issue is troubling, we find that Ms. Juge failed to sufficiently show that the disclosure unreasonably placed Ms. Juge in a false light before the public. The evidence clearly shows that Ms. Juge indicated concern over her alcohol use at the time that she sought treatment at Springfield. Therefore, we cannot say that the disclosure of records that contained a doctor's notation regarding "alcohol abuse" cast Ms. Juge in a false light. Accordingly, Ms. Juge's invasion of privacy claim must fail.
Considering the above, we affirm the judgment of the trial court that granted summary judgment and dismissed the medical malpractice, negligence, and invasion of privacy claims of Ms. Juge against Springfield and Dr. Mestayer.
CONCLUSION
For the foregoing reasons, the January 3, 2018 judgment is affirmed. All costs of this appeal are assessed to the plaintiff, Allison S. Juge.
AFFIRMED.

The intravenous treatments were NAD detox treatments for addictive substances. NAD stands for Nicotinamide Adenine Dinucleotide, which, according to Ms. Juge, is a metabolic co-enzyme said to replenish drained enzymes and target brain restoration to cells harmed or depleted by addiction.

On November 13, 2013, the parties, through their attorneys, signed a Joint and Irrevocable Stipulation that Ms. Juge did not and would not assert a cause of action against Dr. Mestayer regarding her invasion of privacy claim, which the trial court accepted on November 20, 2013.

The hearing on the motion for summary judgment, originally scheduled for April 24, 2017, was rescheduled at the request of the defendants' counsel to March 20, 2017.

We note that no medical review panel was involved in this matter. At the hearing on the motion for summary judgment, counsel for the defendants stated that the medical malpractice claim did not go before a medical review panel because "my clients were not enrolled in the Patients Compensation Fund."

Examples of obvious negligence that could be inferred by a lay person include "obviously careless act[s], such as fracturing a leg during examination, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient's body[.]" Pfiffner, 643 So.2d at 1233. Other examples of obvious negligence include the "[f]ailure to attend a patient when the circumstances demonstrate the serious consequences of this failure, and failure of an on-call physician to respond to an emergency when he knows or should know that his presence is necessary[.]" Pfiffner, 643 So.2d at 1234. See also Turner v. Rabalais, 17-0741 (La.App. 1 Cir. 12/21/17), 240 So.3d 251, 256, writ denied , 18-0123 (La. 3/9/18), 237 So.3d 1193.

We note that prior to the hearing on the motion for summary judgment, the defendants objected to the documents Ms. Juge filed in opposition to the motion for summary judgment. The record does not indicate that the trial court ruled on the objection. See LSA-C.C.P. art. 966D(2).

Ms. Juge also makes the argument that she tried to depose several employees from Springfield in February of 2015 and again in April and December of 2016 and that the defendants clearly and intentionally refused to provide dates for the depositions. We note that Ms. Juge did not file a motion to continue the hearing on the motion for summary judgment, nor did she move to keep the record open for the depositions. Further, Ms. Juge filed no motions to compel the depositions.

Dr. Johnson's medical records were attached to the affidavit of Sandra Martin, Dr. Johnson's office manager.

Arguably, the fourth category for an invasion of privacy claim, the unreasonable public disclosure of embarrassing private facts, might be applicable. However, Ms. Juge did not brief this theory of recovery, and we decline to consider same. See Uniform Rules of Louisiana Courts of Appeal, Rule 2-12.4B(4).

The documents offered by Springfield in support of its motion included copies of certain Requests for Production of Documents in December of 2013 and Ms. Juge's responses thereto, Ms. Juge's records from Springfield, excerpts from Ms. Juge's depositions, the response to a subpoena duces tecum directed to Beirne, a notice of employment by Beirne to the Louisiana Workforce Commission dated July 10, 2013, indicating that Ms. Juge's employment position was eliminated, Ms. Sheinberg's medical records regarding Ms. Juge, Dr. Rachel Murphy's STD Statement of Disability for Ms. Juge, which was signed by Ms. Juge and authorized the disclosure of her medical records to her insurance company, and Springfield's General Medical Records Release and Authorization for Use or Disclosure of Protected Health Information signed by Ms. Juge.

Although Ms. Juge stated in her affidavit that she did not check off "Alcohol use" on the form, she admitted in her response to Springfield's Statement of Uncontested Material Facts that she checked off "Alcohol use," stating in part that she "admitted occasional alcohol use."