ADVANCED MEDICAL REHAB, L.L.C.

VERSUS

SHELBY MANTON

NO. 21-CA-315

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 816-742, DIVISION "D"
HONORABLE SCOTT U. SCHLEGEL, JUDGE PRESIDING

February 23, 2022

**FREDERICKA HOMBERG WICKER**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Marc E. Johnson

**JUDGMENTS AFFIRMED; RULING REVERSED; REMANDED WITH
INSTRUCTIONS.**
   **FHW**
   **SMC**
   **MEJ**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
ADVANCED MEDICAL REHAB, L.L.C.
    George D. Fagan
    Reagan R. Wilty

COUNSEL FOR DEFENDANT/APPELLEE,
SHELBY MANTON
    Kenneth C. Bordes

**WICKER, J.**

Plaintiff-appellant, Advance Medical Rehab, L.L.C. (AMR), seeks reversal of the trial court's May 4, 2021 and May 10, 2021 interlocutory judgments denying its request for a preliminary injunction to enjoin defendant-appellee, Shelby Manton, AMR's former employee, from continuing to engage in business that allegedly competes with AMR's business, in violation of the non-competition provision contained in the Independent Contractor Agreement entered into between the parties. For the following reasons, we affirm the trial court's judgments denying the preliminary injunction; reverse the trial court ruling that deemed moot Ms. Manton's motion seeking to dissolve a temporary restraining order, for damages, and reasonable attorney fees; and remand this matter to the trial court with instructions to set Ms. Manton's motion for hearing to consider the issues of attorney's fees and damages only, and for further proceedings consistent with this opinion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This action arises out Ms. Manton's prior independent contractor relationship with AMR, and her present employment with La Health Solutions.

AMR is a marketing company that represents ten healthcare clinics providing medical and chiropractic care.[1] The clinics are located in: Chalmette, Gentilly, Gretna, Hammond, LaPlace, Lutcher, Mandeville, Metairie, New Orleans, and Slidell. However, AMR markets and publicizes the services of those clinics in the following parishes: Orleans, Jefferson, Plaquemines, Lafourche, Livingston, St. Bernard, St. Charles, St. Tammany, St. James, St. John the Baptist, and Tangipahoa.

On June 29, 2020, AMR, through its owner, Michelle Seiler-Tucker, retained Ms. Manton as an independent contractor for the position of Public Relations

---

[1] In the verified petition, AMR portrays itself to be a healthcare provider by stating it has patients and attorneys it services. However, in her testimony, owner Michelle Seiler-Tucker admitted that AMR treats no patients, and receives payment from neither attorneys, patients, nor patients' insurers.

Director to advance AMR's business operations through the marketing of its services.[2] As part of her work arrangement with AMR, Ms. Manton was required to sign two agreements: one titled "Independent Contractor Agreement", and another titled "Confidentiality and Nondisclosure Agreement." Section 4 of the Independent Contractor Agreement (the "Agreement"), provides, in pertinent part:

> Non-Competition: Ms. Manton agrees that he/she will not knowingly, directly or indirectly, own, manage, operate, jointly control, lend money to, endorse the obligations of, or participate in or be connected as an officer, employee, stockholder, partner, member, counselor, advisor, or otherwise, with any business (other than the Advanced, or an affiliate) engaged to any extent in the business of Advanced, which includes, but is not limited to, the marketing of medical services for chiropractic clinics and physicians, during this contract and for a period of two years after the termination of this contract and/or the relationship between the parties in the Parish of Orleans, Jefferson, Plaquemines, St Bernard, St. Charles St. Tammany, St James, St. John the Baptist, Lafourche, Tangipahoa, Terrebonne and Livingston. Further, this non-compete agreement will apply in any parish in which Advanced has a contract and/or has an existing marketing relationship with a clinic to provide marketing services during the term of this contract or any relationship thereafter. Ms. Manton acknowledges that the remedy at law for any breach of this provision will be inadequate, and that Advanced or its assigns shall be entitled to injunctive relief, without the need for a bond to be paid, should Ms. Manton breach this provision. The provisions of this paragraph shall not apply to routine legal, banking, real estate, or other professional services unrelated to competition with the Company or any of its affiliates. If, in any judicial proceeding, a court shall refuse to enforce any of the separate covenants deemed included in this paragraph, on the ground of unreasonable time or geographic scope, then the time and geographic scope shall be reduced to a reasonable time and geographic scope.

On January 22, 2021, Ms. Manton notified AMR that she was terminating her employment with the company, effective February 5, 2021. Following the termination of her employment with AMR, on February 8, 2021, Ms. Manton became employed as an Account Liaison for LA Health Solutions, a Louisiana-

---

[2] Ms. Manton obtained a marketing degree from Louisiana State University in May 2020.

licensed healthcare provider network that provides medical treatment to its patients through its licensed physicians at its various locations throughout Louisiana.[3]

Upon becoming aware of Ms. Manton's new employment, on April 16, 2021, AMR filed a "Verified Petition for Temporary Restraining Order, Preliminary and Permanent Injunction and for Damages and Other Relief," asserting that Ms. Manton breached the non-competition provision of the Agreement by engaging in marketing of medical services for chiropractic clinics and physicians within the two-year prohibition period post-termination. Attached to the petition were the following exhibits: (1) Independent Contract Agreement executed by Ms. Manton; (2) Verification Affidavit of Michelle Seiler-Tucker; and (3) Affidavit of David Belk, counsel for AMR, who attested to AMR's business practices and the non-compete agreement executed by Ms. Manton. On that same day, the trial court granted AMR's Temporary Restraining Order, and set the hearing for AMR's Preliminary Injunction for April 27, 2021.

On the eve of the evidentiary hearing, April 26, 2021, AMR filed a Prehearing Memorandum in Support of Preliminary Injunction and annexed exhibits: (1) Independent Contract Agreement; (2) Confidential and Non-disclosure agreements; (3) a redacted email dated January 25, 2021; (4) LA Health Solutions' clinic locations; (5) LA Health Solutions' main contact information; (6) LA Health Solutions commercial search results from LA Secretary of State's website; (7) LA Health Solutions list of services; and (8) a copy of LA Health Solutions' website home page. Also, on that same date, Ms. Manton filed a Motion to Dissolve the Temporary Restraining Order, For Damages, and Reasonable Attorney Fees along with a memorandum in support and exhibits of a Facebook post regarding a job opportunity as the Public Relations Director with AMR, a February 11, 2021 email

---

[3] La Health Solutions is owned by Dr. Lyle J. Schween.

regarding the delinquent payment owed to Ms. Manton for past wages, and a February 5, 2021 email itemizing the items Ms. Manton returned to AMR.

At the April 29, 2021 hearing on the preliminary injunction, AMR presented the testimony of two witnesses, Ms. Manton and Mrs. Seiler-Tucker, regarding their respective understandings of the non-compete provision of the Agreement and the duties and job functions of the Public Relations Director position. Both AMR and Ms. Manton introduced into evidence the same documents attached to their respective pleadings and motions. After closing arguments, in-open court, the trial court ruled that the Agreement's non-compete provision was null and void in its entirety, specifically finding that: (1) the Agreement is enforceable only as to the issue of Ms. Manton's signature appearing on the contract; (2) AMR failed to produce sufficient evidence to satisfy its burden regarding any breach or violation of the Confidentiality and Nondisclosure Agreement; (3) AMR produced sufficient evidence that Ms. Manton engaged in similar services while employed at both AMR and LA Health Solutions; and (4) the Agreement's non-compete provision is overbroad, overreaching and in violation of public policy because the language regarding the duration of the non-compete provision extends beyond two-years and its' geographic scope includes any parish in addition to the parishes delineated in the clause. On May 10, 2021, the trial court rendered judgment denying AMR's request for preliminary injunction, and deemed Ms. Manton's Motion to Dissolve Temporary Restraining Order as moot. The trial court did not specifically rule on the attorney's fees and damages issues raised by Ms. Manton.

After the trial court's ruling on the preliminary injunction, on May 2, 2021, AMR filed a Second Request and Motion for the Entry of a Preliminary Injunction, asserting the same claims set forth in its original petition, in addition to new arguments to support its opposition to Ms. Manton's original defenses and the trial court's ruling issued at the April 29, 2021 hearing. On May 4, 2021, the trial court

rendered a judgment denying AMR's motion, declining to reconsider its ruling, and pointing out AMR's right to seek relief through an appeal.

Accordingly, AMR timely sought the instant devolutive appeal seeking review of the trial court's May 4, 2021 and May 10, 2021 judgments. Ms. Manton filed an Answer to the appeal, contending that while the trial court correctly denied AMR's request for preliminary injunction because AMR's non-competition agreement was overbroad and failed to meet the requirements of La. R.S. 23: 921, the trial court erred in denying her Motion to Dissolve Temporary Restraining Order for Damages and for Reasonable Attorney Fees as moot. Further, Ms. Manton has requested that this Court find that AMR wrongfully obtained an issuance of a temporary restraining order against her such that she is entitled to damages and attorney fees pursuant to La. C.C. art. 3608.

**ASSIGNMENTS OF ERROR**

On appeal, AMR avers that the trial court erred by: (1) denying AMR's request for a preliminary injunction because AMR and Ms. Manton entered into a valid and enforceable non-compete agreement prohibiting Ms. Manton from competing or working for AMR's competitors in the specifically identified parishes for two years after the termination of her association with AMR, considering the sufficient evidence AMR presented that Ms. Manton had breached the Agreement's non-compete provision through her employment with LA Health Solutions; (2) refusing to sever and reform the temporal and geographic scopes of the Agreement's non-competition provision in accordance with the mandatory severability clause, when reforming the non-compete provision would not require rewriting the scope of the provision to the outer limits of the law, but rather only require the trial court to strike the offending language; (3) finding the geographic scope of the non-competition provision to be overbroad based on the Trigger Clause; and (4) finding the temporal

scope of the non-compete provision to be ambiguous based on the new contract clause.

## STANDARD OF REVIEW

### *Preliminary Injunctions*

A preliminary injunction is essentially an interlocutory procedural device designed to preserve the status quo between the parties pending a trial on the merits. *Wechem, Inc. v. Evans*, 18-743 (La. App. 5 Cir. 5/30/19), 274 So.3d 877, 884, *writ denied*, 19-01176 (La. 10/15/19), 280 So.3d 600. The primary purpose of injunctive relief is to prevent the occurrence of future acts that may result in irreparable injury, loss, or damage to the applicant. *Id*. Although the judgment on a preliminary injunction is interlocutory, a party aggrieved by a judgment either granting or denying a preliminary injunction is entitled to an appeal. La. C.C.P. art. 3612. *Id*.

Typically, a trial court is granted wide discretion in determining whether an injunction is warranted, and its issuance of a preliminary injunction will not be disturbed on appeal absent manifest error or a clear abuse of discretion. *Id*. However, where the trial court's decision is based on an erroneous interpretation or application of the law, rather than a valid exercise of discretion, such an incorrect decision is not entitled to deference by the reviewing court. *Id*. The non-competition provision at issue herein requires an independent examination of the contract and presents questions of law, rather than a review of the district court's factual findings; thus, the appropriate standard of appellate review is *de novo*—whether the district court was legally correct or incorrect. *New Orleans Jazz and Heritage Foundation, Inc. v. Kirksey*, 09-1433 (La. App. 4 Cir. 5/26/10), 40 So.3d 394, 401.

### *Non-competition Agreements*

Historically, Louisiana has disfavored non-competition agreements. *Wechem, Inc.* 274 So.3d at 885. Louisiana's strong public policy restricting these types of agreements is premised on an underlying stated objective to prevent an individual

from contractually depriving himself of the ability to support himself, and consequently becoming a public burden. *Id.* Such agreements are deemed to be against public policy, except under limited circumstances delineated by La. R.S. 23:921, which declares that all noncompetition agreements are null, unless they meet certain exceptions outlined under La. R.S. 23:921(C), which requires: (1) a two-year maximum duration, (2) a list of the areas in which the former employee is restrained, and (3) competition between the former employee and employer.[4] *Causin, L.L.C. v. Pace Safety Consultants, LLC*, 18-0706, pp. 10-11 (La. App. 4 Cir. 1/30/19), —— So.3d ——, ——, 2019 WL 385206, *writ denied*, 19-0466 (La. 5/20/19), 271 So.3d 203.

In order to determine whether the employer has carried its burden of proving its right to injunctive relief, the court must consider the validity and enforceability of the agreement sought to be enforced by the employer. *Wechem, Inc.,* 274 So.3d

---

[4] The applicable version of La. R.S. 23:921, which was in effect when the agreements at issue were executed, provides:

A(1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void. However, every contract or agreement, or provision thereof, which meets the exceptions as provided in this Section, shall be enforceable.

* * *

C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment. An independent contractor, whose work is performed pursuant to a written contract, may enter into an agreement to refrain from carrying on or engaging in a business similar to the business of the person with whom the independent contractor has contracted, on the same basis as if the independent contractor were an employee, for a period not to exceed two years from the date of the last work performed under the written contract.

D. For the purposes of Subsections B and C of this Section, a person who becomes employed by a competing business, regardless of whether or not that person is an owner or equity interest holder of that competing business, may be deemed to be carrying on or engaging in a business similar to that of the party having a contractual right to prevent that person from competing.

H. Any agreement covered by Subsection B, C, E, F, G, J, K, or L of this Section shall be considered an obligation not to do, and failure to perform may entitle the obligee to recover damages for the loss sustained and the profit of which he has been deprived. In addition, upon proof of the obligor's failure to perform, and without the necessity of proving irreparable injury, a court of competent jurisdiction shall order injunctive relief enforcing the terms of the agreement.

See Acts 2015, No. 404, § 1. Effective: August 1, 2015 to July 31, 2020.

at 585. Further, although La. R.S. 23:921(H) mandates the issuance of injunctive relief without the necessity of proving irreparable harm when the obligor's failure to perform is established, the employer still bears the burden of proving that it is entitled to relief. *Id* at 586.

A non-competition agreement may limit competition only as to a business similar to that of the employer, in a specified geographic area, and for up to two years from termination of employment. *Wechem, Inc.,* 274 So.3d at 585; citing *Paradigm Health System, L.L.C. v. Faust*, 16-1276 (La. App. 1 Cir. 4/12/17), 218 So.3d 1068, 1072. Where the actions the employer seeks to enjoin pursuant to a non-competition agreement do not fall within the exception found in La. R.S. 23:921(C), or where the agreement is found to be unenforceable for failure to conform to La. R.S. 23:921, the employer seeking enforcement is unable to carry its burden of establishing that it is entitled to the relief sought. *Id*.

## LAW AND DISCUSSION

In this instance, AMR seeks to enforce the covenant relative to the non-competition provision in the Agreement to prevent Ms. Manton from working for LA Health Solutions, which AMR alleges is a competitor, by the issuance of a preliminary injunction to prohibit Ms. Manton from marketing LA Health Solutions' services.[5] Thus, the central issue before this Court is whether the non-competition provision in the Agreement governing the business relationship between AMR and Ms. Manton is valid and enforceable, such that AMR is entitled to injunctive relief enjoining Ms. Manton for competing with AMR through her employment with LA Health Solutions.

---

[5] While Ms. Manton was hired as an "independent contractor," non-competition provisions may apply to independent contractors pursuant to La. R.S. 23:921. Provisions of the statute restricting enforcement of noncompetition agreements, which only allows an agreement that prohibits an employee from leaving and beginning his own similar business in competition with his original employer, applies to noncompetition agreements with independent contractors on the same basis as if the independent contractor were an employee. LSA-R.S. 23:921. See *Restored Surfaces, Inc. v. Sanchez*, 11-529 (La. App. 5 Cir. 12/28/11), 82 So.3d 524, *citing Richard Berry & Associates, Inc. v. Bryant*, 03–106 (La. App. 5 Cir. 4/29/03), 845 So.2d 1263 (reversed by statute on other grounds).

***Scope of the Business Restriction***

On appeal, AMR contends that the non-competition provision in the Agreement is a valid covenant pursuant to La. R.S. 23:921(C) because it adequately defines the business that Ms. Manton must refrain from engaging in for two years after her termination, defines and limits the prohibited scope to the marketing and promotion of medical services to attorneys and law firms, and describes the geographic area based on the parishes in which AMR conducts business. We disagree.

Upon review of the non-competition provision, it requires Ms. Manton to refrain from being an "…employee…with *any* business (other than Advanced, or an affiliate) engaged to *any* extent in the business of Advanced, which includes, but is *not limited to*, the marketing of medical services for chiropractic clinics and physicians…." (emphasis added). This provision expressly and explicitly prevents Ms. Manton from engaging in *any* business to *any extent* including marketing of medical services for chiropractic clinics and physicians, without limitations. The non-competition provision prohibits Ms. Manton from marketing any type of services or products for any other business or marketing company, not merely marketing medical services. Although AMR's business can be narrowly defined as "marketing the medical services of physicians and chiropractic clinics," which is a fairly limited definition, the non-competition provision "drives a freight train through this limitation" by further precluding Ms. Manton from engaging in other business that is not similar to that of AMR in violation of La. R.S. 23:921(C). See *Yorsch v. Morel*, 16-662 (La. App. 5 Cir. 7/26/17), 223 So.3d 1274, 1287, *writ denied*, 17-1475 (La. 11/13/17), 230 So.3d 207. (This Court held, *inter alia*, that the non-competition clause was impermissibly broad and so far-reaching because the clause stated "render[ing] services" to any person "engaged in any business whose activities compete in any way with the Business or the Opportunity.").

Ms. Manton relies on *Paradigm Health System, L.L.C. v. Faust*, 16-1276 (La. App. 1 Cir. 4/12/17), 218 So.3d 1068, to support her contention that the trial court properly determined that the non-competition provision was overbroad. To the contrary, AMR contends that Ms. Manton's reliance on that case is misplaced because the language of the provision at issue therein was impermissibly broad, whereas the non-competition provision in AMR's agreement is narrowly tailored to restrain Ms. Manton from marketing medical services to the same or similar clients of AMR.

In *Paradigm*, the First Circuit held that a non-compete agreement, which prohibited a doctor from engaging "in the practice of medicine" or rendering "any medical services" to any business similar to services provided by the former employer, was overly broad and unenforceable. *Id.* The agreement restricted the doctor from engaging in many more types of employment than he actually performed for the employer. The First Circuit pointed out that the "employer is only entitled to keep employees from competing with the employer's actual business, not some overblown contractual definition of business designed to cover the proverbial waterfront and keep ex-employees from being able to make a living in any segment of the ex-employer's industry." *Id.* at 1073.

We find that the non-competition provision contained in the Agreement herein is overbroad in scope because, like the non-compete agreement in *Paradigm*, it restricts Ms. Manton from employment in the practice of marketing in any fashion. This provision prohibits Ms. Manton from not only starting her own marketing business, but from being employed by any business or marketing company that markets its services or products, in violation of La. R.S. 23:921. Accordingly, the trial court did not err in finding the Agreement's non-competition provision overbroad in scope, in violation of La. R.S. 23:921.

*Similar Businesses*

AMR further avers that Ms. Manton's position as an Account Liaison with LA Health Solutions is virtually identical to her former position as the Public Relations Director with AMR. It maintains that in her positions with both AMR and LA Health Solutions, Ms. Manton's responsibilities consist of marketing, promoting, and publicizing medical and chiropractic services to attorneys and law firms. AMR argues that AMR and LA Health Solutions are competitors with the same objective – targeting efforts at attorneys and law firms in order to treat their plaintiff-clients.

We are not persuaded by AMR's contention and find it lacks merit. In *Paradigm*, the First Circuit voided the non-competition agreement based on its finding that enforcement of the contract would have restricted the former employee from engaging in many more types of employment than he actually engaged in with his former employer. *Paradigm*, 218 So.3d at 1074. Similarly, in the instant case, as previously discussed, the Agreement's non-competition provision restricts Ms. Manton from engaging in employment beyond the scope of AMR's actual business.

The phrase "carrying on or engaging in a business similar to that of the employer" in La. R.S. 23:921(C) refers to the employee carrying on or engaging in another business similar to that of the employer. *Vartech Systems, Inc. v. Hayden*, 05–2499 (La. App. 1 Cir. 12/20/06), 951 So.2d 247, 256. Thus, the distinction between the businesses of AMR and LA Health Solutions is crucial since the businesses are not similar in nature. One is a marketing firm and the other is a network of medical clinics.

At the April 29, 2021 preliminary hearing, Ms. Manton testified that LA Health Solutions is a Louisiana-licensed healthcare provider network that provides medical treatment to its patients through its licensed physicians at its various locations throughout Louisiana. Ms. Manton introduced LA Health Solutions'

webpage showing that it is one medical network with several locations that treats patients for various injuries. It employs an estimated 150 employees, including physicians with a variety of specialties, who treat patients that render payments to LA Health Solutions through health insurance, cash, or an agreement with the patient's attorney. Ms. Manton testified that she markets LA Health Solutions' services to attorneys to have their clients seek medical treatment at one of its many locations.

Mrs. Seiler-Tucker, the sole owner of AMR, also testified at the preliminary hearing.[6] On cross-examination, she conceded that AMR is solely a marketing company with one office, from which she conducts business for all of her other business ventures, located in downtown New Orleans. Mrs. Seiler-Tucker admitted that AMR does not have any contracts with attorneys or patients and receives no payments from attorneys, patients, or patients' insurers. AMR's only clients are the medical clinics that financially compensate AMR for marketing the services of each respective clinic.[7] Each medical clinic is independently owned. Mrs. Seiler-Tucker also testified that AMR does not own any of the medical clinics, and does not perform any medical services.

Mrs. Seiler-Tucker further testified that she has no employees but has one independent contractor, the person hired in the position of Public Relations Director, who assists her with the marketing business.[8] On the other hand, Ms. Manton is

---

[6] Mr. Tucker is not a member or owner of AMR.

[7] On direct examination, Mrs. Seiler-Tucker testified that she and her husband own Advanced Medical Rehab of Gretna, Advanced Medical Rehab of Uptown, and Advanced Medical Rehab of Gentilly. However, the ownership of those clinics is not affiliated with AMR.

[8] The distinction between an employee and an independent contractor is a factual determination that must be decided on a case-by-case basis. *Hull v. Jefferson Par. Hosp. Dist. No. 1*, 16-273 (La. App. 5 Cir. 4/26/17), 220 So.3d 838, 844, citing *Tower Credit, Inc. v. Carpenter*, 01–2875, (La.9/4/02), 825 So.2d 1125, 1129. In determining whether the relationship is one of principal and independent contractor, the courts consider whether the following factors are present: (1) a valid contract between the parties; (2) the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it; (3) the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods without being subject to the control and direction of the principal, except as to the result of the services to be rendered; (4) the existence of a specific price for the overall undertaking; and (5) the specific time or duration is agreed upon and not subject to termination at the will of either side without liability for its breach. *Id*; citing *Tower Credit, Inc.*, 825 So.2d at 1129. Since this issue is not before this Court, we decline to address this matter.

currently the employee of an actual medical provider network with employees, including physicians, that treats patients, and her current position includes marketing that healthcare network's services. Furthermore, AMR's clients are not patients or attorneys. Rather, AMR's clients are the owners of the medical clinics, and AMR is marketing the services of those medical clinics. Ms. Manton is not marketing to the owners of the medical clinics AMR represents or to any other medical clinic such that she is competing with AMR for other medical clinics to engage in business with her or on behalf of LA Health Solutions. Instead, Ms. Manton is marketing the services of LA Health Solutions to patients and attorneys. Thus, the marketing business that AMR conducts is not similar to the medical services provided by LA Health Solutions. Also, the Agreement makes no mention of AMR marketing or targeting its business to attorneys, law firms, or any clients.

Thus, we conclude that the trial court erred as a matter of law in determining there was sufficient evidence that Ms. Manton engaged in similar services while employed at both AMR and LA Health Solutions because AMR and LA Health Solutions are not engaged in similar businesses. Though Ms. Manton engaged in similar services while employed at both AMR and LA Health Solutions, since these two businesses are not similar, under the facts of this case, we find Ms. Manton's occupation as an Account Liaison for LA Health Solutions does not fall within a non-competition prohibition permissible within the scope of the limitation set forth in La. R.S. 23:921(C).

### *Geographic Scope*

AMR argues that it does not seek to bar or restrain Ms. Manton from competing in any parish outside of the parishes specifically listed as the geographic region in the non-competition provision. In support of its contention, AMR cites *Causin*, *supra*, to establish that although the non-competition provision contains language that gives it the option to expand the geographic scope, the provision is not

invalid because it is contingent upon a suspensive condition that never matured or became enforceable. We find AMR's interpretation of Louisiana jurisprudence to be misplaced.

La. R.S. 23:921(C) requires that a restrictive covenant identify by name the parishes or municipalities to which it applies. *Bell v. Rimkus Consulting Grp., Inc. of La.*, 07-996 (La. App. 5 Cir. 3/25/08), 983 So. 2d 927, 933-34, *writ denied,* 08-0891 (La. 6/20/08), 983 So. 2d 1276. It is not enough if the restrictive covenant simply says it applies to "whatever parishes, counties, or municipalities the company does business." *Id*. at 933.

The non-competition provision in the Agreement specifies the geographic scope of the restraint, which reads:

> …in the Parish of Orleans, Jefferson, Plaquemines, St Bernard, St. Charles St. Tammany, St James, St. John the Baptist, Lafourche, Tangipahoa, Terrebonne and Livingston. Further, this non-compete agreement will apply in any parish in which Advanced has a contract and/or has an existing marketing relationship with a clinic to provide marketing services during the term of this contract or any relationship thereafter.

Upon review, the non-competition provision purports to prohibit Ms. Manton from engaging in business within specific delineated parishes: "Orleans, Jefferson, Plaquemines, St Bernard, St. Charles St. Tammany, St James, St. John the Baptist, Lafourche, Tangipahoa, Terrebonne and Livingston." However, the provision further states the "agreement will apply in *any parish* in which Advanced has a contract and/or has an existing marketing relationship with a clinic to provide marketing services during the term of this contract *or any relationship thereafter*." (Emphasis added). This provision serves as a catch-all phrase to further restrict Ms. Manton from business activity in any parish within this State, which fails to comport with La. R.S. 23:921(C). Because the Agreement's non-competition provision specifies the parishes where AMR has business relationships, and further extends to

"*any parish* AMR may have a contract or marketing relationship with during the agreement *or thereafter*," the non-competition provision does not meet the unequivocal exception set out in La. R.S. 23:921(C), and is void under La. R.S. 23:921(A)(1). See *Bell*, 983 So. 2d at 933; and *Aon Risk Servs. of La., Inc. v. Ryan*, 01-614 (La. App. 4 Cir. 1/23/02), 807 So. 2d 1058, 1062.[9]

In *Causin*, the non-competition provision provided:

> …in the parishes within Louisiana identified in Exhibit "A" attached hereto. Employee recognizes that from time to time, the Company's business may expand to other parishes within Louisiana and/or other counties or municipalities in other states and Employee agrees that Company may amend Exhibit "A" and append it to this agreement with the same force and effect as the original Exhibit "A." Company will provide Employee with any and all amendments. Employee and the Employer acknowledge and agree that the Company does business in all of the parishes contained in Exhibit "A." Employee agrees that if the Company provides him with an amendment to Exhibit "A" that it will represent as fact that the Company does business in all of the geographical areas identified in such an exhibit unless the Employee provides the Company with written notice disputing that fact within seven days of his receipt of the amendment.
>                                         ***

> Exhibit A stated:

> Causin LLC, Bayou Supply & Safety, its subsidiaries, and affiliates" and listed the parishes for Louisiana: Acadia, Ascension, Assumption, Avoyelles, Beauregard, Caddo, Calcasieu, Cameron, Concordia, DeSoto, East Baton Rouge, Evangeline, Grant, Iberia, Iberville, Jackson, Jefferson, Lafourche, Lafayette, Lincoln, Livingston, Madison, Morehouse, Orleans, Ouachita, Plaquemines, Pointe Coupe, Rapides, St. Bernard, St Charles, St. Helena, St. James, St. John, St. Landry, St. Martin, St. Mary, St. Tammany, Tangipahoa, Terrebonne, Vermillion, Vernon, Washington, and West Baton Rouge. Additionally, it listed the counties in Mississippi: Hancock, Union, Jackson, Warren, Perry, Forrest, Lauderdale, Lawrence, Claiborne, Hinds, Madison, Rankin, and Amite.

---

[9] Some restrictive covenants are geographically overbroad and some fail to specify any valid geographical area. See, e.g., *Kimball v. Anesthesia Specialists of Baton Rouge, Inc*., 00-1954 (La. App. 1 Cir. 9/28/01), 809 So. 2d 405, 412, 413, *writ denied*, 01-3355 (La. 3/8/02), 811 So. 2d 886 (non-compete agreement failed to specify any parishes, municipalities, or parts thereof).

The Fourth Circuit explained that the non-competition provision in *Causin* specified "the parishes and counties where the former employer conducted business and provided an avenue for the former employee to contest the expansion of the list of where the former employer conducted business." We find *Causin* is distinguishable from the present case. In *Causin*, the agreement that contained the non-competition provision also included a provision for the former employer to expand the list of parishes by amending the current list, with the former employee being provided an option to dispute the amendment. In the case *sub judice*, no such option exists.   In fact, AMR has expressly preserved its right to unilaterally claim additional parishes that it engages business in to further restrict Ms. Manton's employment with any other business operating within Louisiana.

Thus, we find the geographic scope of the restraint in the Agreement's non-competition provision to be overly broad and "in derogation of the common right," which "must be strictly construed against the party seeking [its] enforcement." *Restored Surfaces, Inc. v. Sanchez*, 11-529 (La. App. 5 Cir. 12/28/11), 82 So.3d 524, 526.

### *Scope of Duration*

At the April 29, 2021 hearing on the preliminary injunction, in open court, the trial court held that the non-competition provision in the Agreement was overbroad and overreaching because the language for the duration of the non-competition provision extends beyond two-years in violation of La. R.S. 23:921(C). AMR avers that the trial court erroneously interpreted the term of the non-competition provision, and that the court's interpretation of the provision was strained, flawed, and unreasonable.

A non-competition agreement is a contract between the parties who enter it, and it is to be construed according to the general rules of contract interpretation.

*SWAT 24 Shreveport Bossier, Inc. v. Bond*, 00-1695 (La. 6/29/01), 808 So.2d 294 (*superseded by statute on other grounds*). The common intent of the parties is used to interpret a contract. La. C.C. art. 2045. It is well established that "when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. C.C. art. 2046; *Perfection Metal & Supply Co. v. Indep. Supply of N.O. Inc.*, 97-800 (La. App. 5 Cir. 1/14/98), 707 So.2d 86. When a contract may be interpreted from the four corners of the agreement, without consideration of extrinsic evidence, the interpretation is a matter of law. S*cenic Land Construction Co., L.L.C. v. St. Francis Medical Center, Inc.*, 41,147 (La. App. 2 Cir.7/26/06), 936 So.2d 247, 251. In such cases, appellate review considers whether the trial court was legally correct or legally incorrect. *Lawrence v. Terral Seed, Inc.*, 35,019 (La. App. 2 Cir.9/26/01), 796 So.2d 115, 123, *writ denied*, 01–3134 (La. 2/1/02), 808 So.2d 341.

La. R.S. 23:921(C) expressly limits a non-competition provision to two years "from termination of employment." This statute contains no language allowing an extension of a non-competition agreement beyond two years from the termination of employment, and courts have interpreted this to mean that no such extension is allowed. A non-competition provision cannot override the express language of the statute.

In *Herff Jones, Inc. v. Girouard*, 07-393, (La. App. 3 Cir. 10/3/07), 966 So. 2d 1127, 1136-37, the Third Circuit declined to give effect to a contractual provision that allowed a non-competition provision to be extended for more than two years, citing the limitation imposed by 23:921(C). See also *Century 21 Richard Berry & Assocs., Inc. v. Lambert*, 08-668 (La. App. 5 Cir. 2/25/09), 8 So.3d 739, 743 (contract clause providing that non-competition provision survived termination of the underlying agreement was unenforceable on the grounds that it impermissibly extended the non-competition agreement beyond the two-year period from

termination); *Smith v. Commercial Flooring Gulf Coast, L.L.C.*, 19-502 (La. App. 4 Cir. 10/9/19), —— So.3d ——, 2019 WL 5073582  (The Fourth Circuit modified the lower court's injunction enforcing a non-competition agreement so that the injunction did not extend more than two years from the termination of employment).

As pointed out above, the non-competition provision provides:

> …during this contract and for a period of two years after the termination of this contract and/or the relationship between the parties in the Parish of Orleans, Jefferson, Plaquemines, St Bernard, St. Charles St. Tammany, St. James, St. John the Baptist, Lafourche, Tangipahoa, Terrebonne and Livingston.

This provision expressly states that the restraint on the non-competition provision ends two years after the termination of the contract and/or the relationship between the parties. We agree with the trial court that this provision is overbroad. It is unclear when the contract and/or relationship between the parties would end. There is no reference to the non-competition provision terminating two years after Ms. Manton's relationship with AMR ends. AMR has not cited any other reference or provision within the Agreement to overcome the trial court's interpretation of this provision or jurisprudence that it relies on for its assertions.

It is the absurdity of the consequences of a literal interpretation which determines whether the court can search beyond the language of the contract for the parties' intent. La. C.C. art. 2046; *Cashio v. Shoriak*, 481 So.2d 1013 (La. 1986). This Court need not go beyond the language of the contract to determine the parties' intent. The intent was clearly for Ms. Manton to be an independent contractor with AMR, and for Ms. Manton to not compete against AMR upon termination of the contract and/or relationship between the parties. However, termination of the contract and/or relationship between the parties is unknown and the language of that provision is ambiguous. This is significant to Ms. Manton knowing how long she is restricted from engaging in business activity similar to AMR. AMR has gone beyond

the limits set forth in La. R.S. 23:921(C) with the above-referenced language in the Agreement. Thus, we find the duration of the non-competition provision is overbroad and ambiguous.

### *Severability Clause*

AMR asserts that if there is any ambiguity or overbreadth in the non-competition provision, the trial court legally erred by failing to enforce the severability clause in the Agreement's non-competition provision. It further argues that even in the absence of a severability clause, the trial court should have exercised its right to delete the offending provisions and permit the remainder of the Agreement to stand. AMR has referred this Court to *SWAT*, *supra*, and La. R.S. 23:921(D) for the proposition that the trial court should have nullified and excised the offending language of the provision without invalidating the provision in its entirety.

AMR's interpretation of Louisiana jurisprudence is misplaced. In *SWAT*, the Louisiana Supreme Court addressed the applicability of La. R.S. § 23:921 to an overbroad non-competition provision. 808 So.2d at 308. Upon determining that the provision was overbroad, our Supreme Court concluded that it was "possible to excise the offending language from the noncompetition clause without doing undue damage to the remainder of the provision." *Id*. at 309. We find *SWAT* to be distinguishable from the matter before us. First, the "undue damage" that the *SWAT* court was able to avoid is not possible in this case considering the ambiguous and overbroad language contained within the non-compete provision. Second, the *SWAT* court relied on the specific terms of the severability provision contained in the agreement. That severability provision provided:

> In the event of any of [sic] provisions, paragraphs or portions thereof of this Agreement are held to be unenforceable and invalid by any court of competent jurisdiction, the validity and enforceability of the remaining provisions or portions thereof shall not be

affected thereby, and each term and provision of the agreement shall be valid and enforceable to the fullest extent permitted by law.

Our Supreme Court proceeded to excise the offending language from the non-competition clause "[i]n light of this severability clause which reflect[ed] the parties' intent." *Id*. The instant Agreement also contains a severability provision; however, it differs from the provision in *SWAT*. The Agreement's provision provides:

…If in any judicial proceeding, a court shall refuse to enforce any of the separate covenants deemed included in this paragraph, on the ground of unreasonable time or geographic scope, then the time and geographic scope shall be reduced to a reasonable time and geographic scope.

The *SWAT* severability provision allowed the Supreme Court to selectively remove the offending language because the language of the agreement revealed that the parties contemplated how the unenforceable portion would be severed from the agreement. However, the instant severability provision contemplates invalidation based only on the grounds of an unreasonable time period or geographic scope. It is silent as to how the offending language should be severed if the provisions are deemed unenforceable on other grounds, as has been found in this case. AMR's reliance on the specific terms of the Agreement's severability provision, and considering the material difference between the *SWAT* provision and the instant clause, this Court concludes that the holding in *SWAT* is not dispositive.

In the matter *sub judice*, the non-competition provision cannot be reformed because it wholly fails beyond the geographical area and two-year duration; it is deficient because it fails to comport with all three requirements outlined in La. R.S. 23:921(C) as discussed herein. As currently written, this Court would effectively be required to rewrite the Agreement's non-competition provision to bring it into compliance with La. R.S. 23:921(C). Reformation in such circumstances would mean rewriting a disfavored contract into compliance with a narrowly drawn

statutory exception. *Vartech Sys., Inc. v. Hayden*, 05-2499 (La. App. 1 Cir. 12/20/06), 951 So. 2d 247, 260, 261; see also *Kimball*, *supra*, 809 So. 2d at 414. Thus, excising the offending language within the Agreement's non-competition provision would require this Court to completely rewrite provision, which we decline to do considering the language of the provision in its entirety.

### *Second Motion for Preliminary Injunction*

Regarding the trial court's May 4, 2021 judgment denying AMR's second motion for preliminary injunction, the transcript of the April 29, 2021 preliminary hearing reveals that the trial court agreed to permit both parties to submit post-hearing memoranda, but the parties declined to do so. Thereafter, on May 2, 2021, AMR filed a subsequent motion for preliminary default, which set forth the same arguments made in its original petition for preliminary injunction, along with additional arguments to oppose the trial court's April 29, 2021 ruling and Ms. Manton's defenses.

We agree with the trial court that AMR's filing was improper to seek reconsideration or relief of the trial court's previous judgment and rulings. Even if AMR was attempting to take advantage of the trial court's initial recommendation that both parties submit post-hearing memoranda, once the trial court ruled on the requests for preliminary injunction, no additional memoranda or arguments by the parties could be considered by the trial court. AMR cannot circumvent the trial court's ruling or the appellate process by instead submitting a subsequent motion (1) that addresses the same issues it previously asserted in the original motion, and/or (2) to address the trial court's ruling on the matter.

### *Answer to Appeal*

Ms. Manton has filed an Answer to the appeal, contending that the trial court correctly denied AMR's request for preliminary injunction because AMR's non-competition agreement was overbroad and failed to meet the requirements of La.

R.S. 23:921. However, Ms. Manton asserts that the trial court erred in denying her motion to dissolve temporary restraining order, for damages, and reasonable attorney fees as moot. Specifically, she requests that this Court find that AMR wrongfully obtained the issuance of a temporary restraining order against her such that she is entitled to damages and attorney's fees pursuant to La. C.C. art. 3608, which permits damages for the wrongful issuance of a preliminary injunction on a motion to dissolve or on a reconventional demand. Ms. Manton contends the trial court erred in finding that there was sufficient evidence that she engaged in similar services while employed at both AMR and LA Health Solutions. For the reasons previously discussed herein, we agree.

La. C.C.P. art. 3608 allows that "attorney's fees for the services rendered in connection with the dissolution of a restraining order...may be included as an element of damages...." *Hewitt v. Lafayette City-Parish Consolidated Government*, 16-629 (La. 5/27/16), 193 So.3d 149. While the temporary restraining order against Ms. Manton dissolved by operation of law on April 27, 2021, pursuant to La. C.C.P. art. 3604[10], such fact is immaterial to the question of whether attorney's fees may be awarded as an element of damages because here, the temporary restraining order was wrongfully obtained. *Girouard v. Summit Fin. Wealth Advisors, LLC*, 20-261 (La. App. 3 Cir. 3/24/21), 318 So.3d 231, 244, *writ denied*, 21-560 (La. 6/22/21), 318 So.3d 710.

Accordingly, we reverse the trial court's ruling that deemed Ms. Manton's motion moot, and remand this matter to the trial court to set this motion for hearing on the merits.

---

[10] La. C.C.P. art. 3604, provides, in pertinent part:
A. A temporary restraining order shall be endorsed with the date and hour of issuance; shall be filed in the clerk's office and entered of record; shall state why the order was granted without notice and hearing; and shall expire by its terms within such time after entry, not to exceed ten days, as the court prescribes. A restraining order, for good cause shown, and at any time before its expiration, may be extended by the court for one or more periods not exceeding ten days each. The party against whom the order is directed may consent that it be extended for a longer period. The reasons for each extension shall be entered of record.

21-CA-315                                    22

## DECREE

For the reasons set forth herein, we affirm the trial court's May 4, 2021 and May 10, 2021 judgments that denied the preliminary injunction; reverse the trial court's ruling that deemed moot Ms. Manton's motion seeking to dissolve the temporary restraining order, for damages, and reasonable attorney fees; and remand this matter to the trial court with instructions to set Ms. Manton's motion for hearing to consider the merits since the issues of attorney's fees and damages remain, and for further proceedings consistent with this opinion.

**JUDGMENTS AFFIRMED**; **RULING REVERSED**; **REMANDED WITH INSTRUCTIONS**.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**FEBRUARY 23, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 21-CA-315

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HON. SCOTT U. SCHLEGEL (DISTRICT JUDGE)
GEORGE D. FAGAN (APPELLANT)          REAGAN R. WILTY (APPELLANT)          ALEXANDRE E. BONIN (APPELLEE)
KENNETH C. BORDES (APPELLEE)

**MAILED**
NO ATTORNEYS WERE MAILED